IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff;<br><br>v.<br><br>Terry Johnson, in his official capacity as Alamance County Sheriff,<br><br>                Defendant. | No. 12-cv-1349<br><br>UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The United States respectfully asks the Court to deny Defendant's Motion for Judgment on the Pleadings, ECF No. 11. Defendant makes two arguments in support of his Motion: (1) that a prior declaratory judgment action regarding the interpretation of North Carolina's professional conduct rules has preclusive effect on the present litigation over Defendant's pattern or practice of civil rights violations; and (2) that the United States' pattern or practice claims are moot because the United States Department of Homeland Security ("DHS") terminated Defendant's authority to investigate immigration offenses at the Alamance County Jail. Both arguments are baseless.

The declaratory judgment action does not preclude the present litigation because the two cases share no common factual nucleus. The former action related solely to the United States' ability to interview personnel at the Alamance County Sheriff's Office ("ACSO") outside the presence of Defendant's counsel, while the latter case focuses on

discriminatory law enforcement operations, such as traffic stops and vehicle checkpoints. Nor are the United States' claims moot in light of DHS' termination of ACSO's authority to investigate immigration offenses in the Alamance County Jail. The United States' claims are supported by numerous factual allegations that plainly demonstrate the existence of an active controversy redressable by this Court. Even if the claims were premised solely on ACSO's discriminatory practices in the County Jail, however, the claims would not be moot because ACSO may regain its authority to investigate immigration offenses in the future. Accordingly, this Court should deny Defendant's Motion for Judgment on the Pleadings.

## BACKGROUND

This case centers on Defendant's pattern or practice of discriminatory law enforcement activities targeting Latinos in Alamance County, North Carolina. The United States Department of Justice ("DOJ") uncovered these discriminatory enforcement activities during a 27-month investigation that formally opened on June 2, 2010, pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and the Violent Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act"). The investigation involved interviews with over 125 individuals and review of thousands of pages of documents.

In June 2011 – after Defendants' counsel repeatedly informed the United States that he would not permit interviews of ACSO personnel outside the presence of

Defendants' counsel – the United States filed an action under the Declaratory Judgment Act, 28 U.S.C. § 2201, "to clarify obligations imposed by Rule 4.2 of the North Carolina Rules of Professional Conduct." *United States v. Alamance County, et al.*, No. 11-cv-507 (M.D.N.C.), Am. Compl., ECF No. 17, at ¶ 1. Specifically, the action sought "a declaration that Rule 4.2 permits the United States' attorneys to interview" ACSO personnel outside the presence of Defendant's counsel during the United States' investigation. Am. Compl. ¶ 2. Neither party conducted any discovery, and the United States moved for summary judgment one month after filing the Complaint. The summary judgment motion explained that "[t]his lawsuit presents a pure question of law: whether North Carolina Rule of Professional Conduct 4.2 . . . permits attorneys for the United States to interview current and former employees of [ACSO] outside the presence" of Defendant's counsel. *United States v. Alamance County, et al.*, No. 11-cv-507 (M.D.N.C.), Mot. for Summ. J., ECF No. 19, at 1. While this motion was pending, the United States obtained sufficient evidence to conclude that Defendant engaged in a pattern or practice of constitutional violations. *See United States v. Alamance County, et al.*, No. 11-cv-507 (M.D.N.C.), Mot. to Dismiss, ECF No. 52, at 1, 3 & ECF 52-1.

On September 18, 2012 – the same day the investigation concluded – the United States moved to dismiss the declaratory judgment action, advising the Court that "[a]s the United States no longer seeks to interview ACSO officers for investigative purposes, there is no longer an 'actual controversy' ripe for declaratory relief.'" *United States v. Alamance County, et al.*, No. 11-cv-507 (M.D.N.C.), Mot. to Dismiss, ECF No. 52, at 1.

3

The Court granted the United States' request to dismiss. Also on September 18th, DHS terminated ACSO's agreement with Immigration and Customs Enforcement ("ICE") pursuant to Section 287(g) of the Immigration and Nationality Act (the "287(g) Agreement"), which had permitted certain trained ACSO personnel to investigate potential immigration violations committed by individuals detained at the Alamance County Jail.

Upon issuing its public findings, the United States sought to negotiate a court enforceable agreement to the federal law violations identified during its investigation. Defendant refused to enter into negotiations over any such agreement, and the United States filed the instant suit pursuant to Section 14141. The suit alleges that, since at least 2007, Defendant "has engaged in a pattern or practice of discriminatory law enforcement activities directed against Latinos in Alamance County," in violation of the Fourth and Fourteenth Amendments. Compl., ECF No. 1, at ¶ 1. These unlawful activities include: "deputies routinely target[ing] Latinos for stops during roving traffic enforcement operations," Compl. ¶ 4; "disproportionately subjecting Latinos to unreasonable seizures," Compl. ¶ 5; and "disproportionately locating vehicle checkpoints in predominantly Latino neighborhoods." Compl. ¶ 5. The Complaint further alleges that Defendant Johnson directs these discriminatory activities and fosters a culture of bias by describing Latinos with derogatory language, such as calling them "taco eaters." *See generally* Compl. ¶¶ 6, 24-33.

4

## ANALYSIS

### I. The Prior Declaratory Judgment Action Does Not Have Res Judicata Effect on This Litigation

The voluntary dismissal of the United States' declaratory judgment action does not have preclusive effect on the present litigation. The doctrine of res judicata forbids subsequent legal actions involving the same parties who were previously subject to a final judgment on the merits of a suit only where there is "'an identity of the cause of action in both the earlier and the later suit.'" *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1312-13 (4th Cir. 1986)). While "no simple test exists to determine whether claims are based on the same cause of action for claim preclusion purposes," *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003), the Fourth Circuit has explained that such claims must "'arise out of the same transaction or series of transactions, or the same core of operative facts.'" *Id*. (quoting *In re Varat Enterprises, Inc*, 81 F.3d 1310, 1316 (4th Cir. 1996)).

Defendant makes the conclusory assertion that the declaratory judgment action precludes the United States' current pattern or practice lawsuit because "[b]oth of the lawsuits arise out of the same transactions; the alleged discriminatory policing activities of the Defendant." Mot. J. Pleadings at 6. To the contrary, the two lawsuits filed by the United States involve different conduct by Defendant, advance different legal theories, and seek different relief. In the declaratory judgment case, the sole "operative fact" was Defendant's refusal to allow attorneys for the United States to interview ACSO personnel

outside the presence of Defendant's counsel.  By contrast, the current case centers on ACSO's pattern or practice of discrimination against Latinos, including the use of various law enforcement activities to intentionally target them.

The only connection between the two lawsuits is their general relation to the United States' statutory responsibility to investigate and prosecute civil rights violations.  This connection is insufficient to trigger res judicata, as it is well established that "overlapping motivation for separate harms is insufficient to render those harms identical for purposes of claim preclusion."  *Novell, Inc. v. Microsoft Corp.*, 429 F. App'x 254, 262 (4th Cir. 2011) (emphasis omitted).  In *Novell*, the Fourth Circuit rejected Microsoft's argument that Novell's participation in a prior antitrust lawsuit involving Microsoft operating system products precluded a subsequent antitrust lawsuit over software applications, even though "both suits implicated Microsoft's desire to control the operating system market."  *Id.* at 262.  The court emphasized that the operating system case involved "a distinct set of harms," and that "any appearance of identicality between the claims is a product of the level of generality at which Microsoft seeks to frame them."  *Id.*; *see also Russian Media Grp., LLC ("RMG") v. Cable Am. Inc.*, 598 F.3d 302, 311 (7th Cir. 2010) (prior suit over pirating of Russian-language television programming did not bar later suit over similar pirating because "[r]es judicata does not preclude a suit arising from a completely different event, no matter how similar the defendant's misconduct").

The same principle applies here.  The "set of harms" underlying the two lawsuits

6

filed by the United States are clearly distinct: the first suit arose from a dispute over interviews with ACSO personnel, while the second action involves Defendant's discriminatory law enforcement activities, such as vehicle checkpoints and traffic stops. Accordingly, claim preclusion does not apply.

Defendant baldly asserts, however, that res judicata precludes the United States' pattern or practice claim simply because the United States *could have* raised it in the 2011 declaratory judgment action. Mot. for J. Pleadings at 5-6 (noting that Defendant's allegedly discriminatory conduct began four years before the declaratory judgment suit). This argument contravenes settled law. Res judicata does not preclude all future claims that existed at the time of a prior lawsuit, but rather all existing claims rooted in the same nucleus of operative fact. *See, e.g.*, *Keith*, 900 F.2d at 740 ("'the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'") (quoting *Harnett*, 800 F.2d at 1313). The lone case cited by Defendant in support of his argument highlights the distinction. *See* Mot. J. Pleadings at 5 (citing *Harnett*, 800 F.2d 1308). There, the court found that a minority shareholder's fraud claim against controlling shareholders was precluded by a prior shareholder derivative suit regarding disclosures made in the same series of corporate transactions. *Harnett*, 800 F.2d at 1313-15. Res judicata did not preclude the fraud claim simply because the claim existed at the time of the derivative suit; rather, the doctrine applied because both claims focused on the majority shareholders' disclosures during a connected series of mergers and spinoffs in early 1983. *Id*. at 1311.

7

There is no comparable connection here.  Defendant's refusal to permit the United States to interview ACSO employees in 2011 is wholly distinct from Defendant's law enforcement activities targeting Latinos since 2007.  As these two actions do not share a common factual nucleus, res judicata does not apply.

## II.     The United States' Claims Are Not Moot

Defendant's mootness argument is similarly unavailing.  Defendant contends that the United States' "allegations contained in subsection H" of the Complaint – regarding ACSO's discriminatory detention and questioning of Latino arrestees and its practice of referring Latino arrestees to federal investigators pursuant to the 287(g) Agreement – are "moot" because the Department of Homeland Security terminated ACSO's authority to investigate immigration offenses.  Mot. J. Pleadings at 7.  Defendant also asserts that the United States' "claim based on the alleged discrimination in the 287(g) program at the [Alamance County] jail is now moot."  Mot. J. Pleadings at 8.  In support of these arguments, Defendant points only to the basic proposition that federal court jurisdiction requires "an actual controversy" at "all stages of review," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted).  *See* Mot. J. Pleadings at 7.  This principle furnishes no basis for mooting either of the United States' claims here.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *J.W. v. Knight*, 452 F. App'x 411, 414 (4th Cir. 2011) (alteration in original) (*quoting Powell v. McCormack*, 395 U.S. 486, 496

8

(1969)). An "actual controversy" must exist throughout the litigation, a standard that requires a litigant to "'have suffered some actual injury that can be redressed by a favorable judicial decision,'" *J.W.*, 452 F. App'x at 414 (*quoting Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). Both of the United States' claims easily meet this standard.

To establish its two claims, the United States must demonstrate that Defendant engages in a pattern or practice of conduct that violates the Fourth and Fourteenth Amendments. Each of these claims is supported by numerous allegations of discriminatory and unconstitutional practices – but each practice does not constitute a separate claim. The Complaint therefore does not contain one claim for traffic stops and another for, as Defendant asserts, "alleged discrimination in the 287(g) program." Instead, the allegations show that Defendant has been engaged in a multi-faceted and pervasive pattern of unlawful conduct. *See, e.g.*, Compl. ¶¶ 24-26, 34-40, 44-46 (ACSO deputies routinely target Latinos during traffic enforcement and drug interdiction operations; ACSO deputies disproportionately arrest Latinos for minor infractions; and ACSO disproportionately locates vehicle checkpoints in and around predominantly Latino neighborhoods).

While Defendant's methods of discrimination may have changed over time, Defendant's pattern or practice of targeting Latinos with enforcement actions has

9

remained constant.[1]  The allegations Defendant cites are therefore not "moot;" rather,

they are clearly relevant to Defendant's longstanding pattern or practice of discrimination

against Latinos.[2]  Defendant's continuing discriminatory conduct demonstrates the

existence of an "active" controversy.  The termination of the 287(g) Agreement is thus of

no consequence.  Regardless, even if the 287(g) allegations did not exist, the remaining

allegations are plainly sufficient to demonstrate the existence of an active controversy

that is redressable by this Court.  Defendant makes no argument to the contrary.

Accordingly, the United States' claims are not moot.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court

deny Defendant's Motion for Judgment on the Pleadings.

---

[1] Additionally, evidence demonstrating that Latino arrestees were detained or questioned in a discriminatory manner is relevant to establishing discriminatory intent under the totality of the circumstances test set forth in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977).

[2] Moreover, Defendant could regain authority to investigate immigration violations and resume discriminatory practices at the Alamance County Jail.  Accordingly, even a claim premised entirely on these allegations would not be moot.  *See, e.g.*, *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (even where defendant voluntarily ceased unlawful conduct, claim is not moot unless "there is no reasonable expectation that the alleged wrong will recur") (internal quotation marks omitted); *Feldman v. Pro Football, Inc.*, 419 F. App'x 381, 387 (4th Cir. 2011) (same).

Respectfully submitted,

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

AVNER M. SHAPIRO
DC Bar Number: 452475
Special Counsel
Special Litigation Section
Civil Rights Division

*s/ Samantha K. Trepel*
SAMANTHA K. TREPEL
DC Bar Number: 992377

*s/ Michael J. Songer*
MICHAEL J. SONGER
DC Bar Number: 975029
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-6255
Fax: (202) 514-4883
samantha.trepel@usdoj.gov
michael.songer@usodj.gov

Attorneys for the United States

11

## **CERTIFICATE OF SERVICE**

      I certify that the foregoing United States' Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings was served through the electronic filing service on March 13, 2013 to the following individual:

S.C. Kitchen
Turrentine Law Firm
920-B Paverstone Dr
Raleigh, NC  27615
ckitchen@turrentinelaw.com


Attorney for Defendant Sheriff Johnson


                                                *s/ Samantha K. Trepel*
                                                SAMANTHA K. TREPEL
                                                Attorney for the United States