IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff;<br><br> v.<br><br>Terry Johnson, in his official capacity as Alamance County Sheriff,<br><br>    Defendant. | No. 12-cv-1349<br><br>UNITED STATES' RESPONSE TO MOTION FOR LEAVE TO INTERVENE |

**UNITED STATES' RESPONSE TO MOTION FOR LEAVE TO INTERVENE**

Boney Publishers, Inc. ("Boney") has moved this Court for leave to intervene in the above-captioned proceeding for the limited purpose of seeking access to certain documents. ECF No. 41. The United States does not oppose Boney's motion to intervene, but respectfully urges this Court to deny Boney access to documents covered by the Joint Confidentiality and Protective Order ("Protective Order"), ECF No. 18. The First Amendment and the common law do not create a presumption of access to materials exchanged by the parties during discovery. Nor does the North Carolina Public Records Act provide a viable avenue for Boney to access the documents, because protective orders issued by federal courts preempt state open records laws. Regardless, the North Carolina Act contains a specific statutory exemption for documents shielded by court order, such as the Protective Order here. Moreover, giving Boney access to these

documents would subject non-party witnesses, including the United States' confidential informants, to possible oppression and retaliation. For these reasons, this Court should deny Boney access to the documents it seeks.

## BACKGROUND

On December 20, 2012, the United States filed suit against Alamance County Sheriff Terry Johnson, alleging that the Alamance County Sheriff's Office ("ACSO") engages in a pattern or practice of intentionally discriminatory policing that targets Latinos, in violation of 42 U.S.C. § 14141. Among other things, the United States' Complaint alleges that Defendant Johnson has instructed his employees to target Latinos, and his office discriminates against Latinos through various law enforcement activities, including traffic stops, vehicle checkpoints, and jail booking procedures. *See* Compl., ECF No. 1, at ¶¶23-67.

Discovery in this matter began earlier this year, after the Court approved the parties' joint motion for a Protective Order. To protect witnesses from possible reprisal, the parties have designated as confidential certain personally identifiable information contained in their pleadings and responses to document requests and interrogatories. The parties likewise designated deposition transcripts confidential because they contain personally identifiable information, and have filed under seal exhibits to several pleadings that contain such information. As the United States' briefing on its Motion for Reconsideration explains in greater detail, the fears of reprisal and retaliation are not

2

illusory: numerous individuals have expressed fear for their safety or their jobs due to their involvement in this case.

Boney does not specify which of these documents it wishes disclosed. In its Motion, ECF No. 41, Boney references the Protective Order generally as well as "documents filed under seal," while Boney's Memorandum, ECF No. 42, refers to "transcripts of depositions," "copies of interrogatory responses," and motions filed under seal. Nonetheless, Boney's Motion appears aimed generally at two categories of documents: unfiled documents subject to the Protective Order, and documents filed under seal.

## ANALYSIS

Boney argues that it is entitled to documents under two distinct legal theories: (1) that the North Carolina Public Records Act provides for access; and (2) that filed documents are presumptively public records under the common law and the First Amendment. Regardless of which legal theory is applied, Boney's contention that it should have access to documents subject to the Protective Order in this case is unavailing.[1]

---

[1] To the extent Boney seeks unfiled documents not covered by the Protective Order from Defendant under the state Public Records Act, it would seem that Defendant can properly refuse disclosure pursuant to the specific exception for trial preparation materials. *See N.C. Gen. Stat. § 132-1.9(b).* If there is any dispute over the application of the trial preparation exception, though, that is a dispute on which the United States takes no position, and which seems inappropriate for consideration in this forum. If the Court's Protective Order does not shield the documents from disclosure, any argument over Defendant's obligation to allow access is purely a matter of state law. And Boney cannot

3

## I. The North Carolina Public Records Law Does Not Apply to Materials Covered by the Court's Protective Order

The Protective Order entered by this Court forecloses Boney's claims under the state Public Records Act, because the Act contains an explicit exemption for material protected under a court order. *See N.C. Gen. Stats. §132-1.9(g)*. But even if that exemption did not apply, documents subject to the Protective Order would still be properly shielded from disclosure here, because a federal court may specifically protect some materials from public disclosure that would otherwise be covered by the open records law. *See Wittenberg v. Winston Salem/Forsyth County Board of Educ.*, No. 1:05CV818, 2009 WL 2566959, at *2 (M.D.N.C. Aug. 19, 2009)(granting parties' motion to seal settlement agreement, finding that "[a]bsent a court order, the North Carolina Public Records law requires that settlement agreements involving local governmental entities be made public.").

Moreover, it is clear that, in determining the contours of a protective order, a federal district court is not bound by state open records law. In a situation similar to that presented here, a federal District Court in Arizona was confronted with a request by news organizations to modify a protective order that the news organizations argued shielded documents that should have been public under Arizona's public records law. The court held that the news organizations had no right of access, noting that "a district court

---

seek access to documents possessed solely by the United States pursuant to the state Public Records Act, as the Act does not apply to the federal government.

presiding over a federal criminal case isn't bound by a state's public records law." *United States v. Loughner*, 807 F.Supp. 2d 828, 833 (D. Az. 2011). Although conceding "that Arizona's public records law supports the news organizations' side," the Court specifically found "that it is not in any way bound by that law." *Id*. at 835. The same principle applies here. The Protective Order overcomes any presumption of public access applied to the materials sought by Boney.

## II. The Qualified Access Right Under the First Amendment and Common Law Does Not Entitle Boney to Materials Covered by the Protective Order

The materials sought by Boney's motion are not subject to a presumption of disclosure under the First Amendment and common law. As such, they are properly shielded from disclosure under the Protective Order, which was entered after appropriate consideration by this Court for good cause. Accordingly, this Court should deny Boney's request for these documents.

### A. There is No Public Right To Access Documents Produced in Discovery and Attached to Non-Dispositive Motions

There is no First Amendment or common law right for a third party to access discovery documents unless and until they are filed with the court as part of a dispositive motion. *See In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013). Thus, Boney cannot access documents exchanged in or arising out of discovery, such as interrogatory responses or deposition transcripts.

5

While the First Amendment and the common law presume a right to access certain judicial records, discovery materials exchanged between the parties do not constitute such records. As the Supreme Court has noted, "pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times Co., et al. v. Rhinehart, et al.*, 467 U.S. 20, 33 (1984) (citations omitted). *See also Bond v. Utreras*, 585 F.3d 1061, 1066 (7th Cir. 2009) ("[T]here is no constitutional or common-law right of public access to discovery materials exchanged by the parties but not filed with the court. Unfiled discovery is private, not public."); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) ("The results of pretrial discovery may be restricted from the public.").

Documents attached to discovery motions likewise do not constitute judicial records. It is well established that documents filed with the court are not automatically considered "judicial records," such that a First Amendment or common law presumption of access attaches. *See Kinetic Concepts, Inc., et al. v. Convatec, Inc., et al.*, No. 1:08CV00918, 2010 WL 1418312, at *7 (M.D.N.C. April 2, 2010) ("[T]he mere filing of a document with a court does not render the document judicial. Accordingly, in any

6

given case, some court-filed documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as judicial records at all.") (quotation marks and citations omitted). Courts have consistently held that documents qualify as "judicial records" only if they play a part in the adjudication of substantive rights. *See In re Application of United States*, 707 F.3d at 290; *see also Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir. 1988) ("if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public and not protected. . . ."); *Kinetic Concepts*, 2010 WL 1418312, at *9 ("no public right of access" attaches to documents where documents are not related to a dispositive motion concerning substantive rights). Therefore, documents filed in relation to discovery motions, in which substantive rights are not at issue, do not trigger either the First Amendment or common law rights of access. *See Chicago Tribune Co., et al. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312-15 (11th Cir. 2001) (finding that the "Press's common-law right of access does not extend to the sealed materials submitted in connection with motions to compel discovery" while "discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right"); *Anderson, et al. v. Cryovac, Inc., et al.*, 805 F.2d 1, 11-12 (1st Cir. 1986) ("We . . . hold that there is no right of public access to documents considered in civil discovery motions. . . [because] discovery proceedings are

7

fundamentally different from proceedings to which the courts have recognized a public right of access.").

Unsurprisingly, the cases cited by Boney finding a public right of access involve summary judgment motions, the quintessential example of a motion involving the adjudication of substantive rights. These cases are inapt here, where the only materials designated confidential by the parties are unfiled discovery materials and documents attached to discovery motions. No presumption of public access applies to such documents.

### B. Because No Presumption of Public Access Applies, the Documents are Properly Shielded by the Protective Order, Which Was Entered for Good Cause

It is axiomatic that courts have discretion to issue protective orders under Federal Rule of Civil Procedure 26(c) for good cause, in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The propriety of protective orders has long been recognized, as the ability of courts to issue protective orders "furthers a substantial governmental interest." *Seattle Times*, 467 U.S. at 34. Protective orders in the context of discovery are particularly appropriate, given the rationale behind civil discovery. "Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a

8

significant potential for abuse. . . . discovery also may seriously implicate privacy interest of litigants and third parties." *Id.* at 34-35. In *Seattle Times*, the Supreme Court held that where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pre-trial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Id.* at 37.

The Protective Order entered by the Court in this case satisfies the good cause standard, as it was entered in response to a joint motion to protect personal information and the identities of ACSO employees and witnesses – none of whom is a party to this action. *See, e.g., Haber v. Evans*, 268 F.Supp.2d 507, 512 (E.D. Pa. 2003) (finding good cause for issuance of protective order to redact personally identifying information of victims, witnesses, and confidential informants in civil rights case against law enforcement officials, noting especially that "the alleged victims are not responsible for the public attention that the case has received"). The interest in maintaining the privacy and confidentiality of non-party witnesses is particularly acute here, where witnesses have expressed fears of retaliation, such as the loss of jobs, and been subjected to reprisal, including a threat serious enough to trigger an FBI investigation, *see* U.S. Reply in Support of Motion for Reconsideration at 2-3, 9-10, ECF No. 50. Moreover, the parties have only withheld the personally identifiable information necessary to achieve the substantial government interest in assuring that witnesses provide information without fear of oppression and retaliation. When attaching material to support their discovery

motions, the parties have only sealed and redacted certain documents related to the witnesses at issue, rather than withholding entire filings.

### III. There Has Been No Request for a Closed Courtroom

Finally, without dwelling much on this point, the United States notes that it has never requested or suggested closing the courtroom for any proceeding in this case. Nor has Defendant made such a request. Therefore, Boney's objection to "closure of the courtroom during judicial proceedings," ECF No. 41, is premature and unnecessary. The United States has no intention of seeking closure of the courtroom during judicial proceedings in this case.

### CONCLUSION

For the foregoing reasons, the United States does not oppose Boney's motion to intervene for the limited purpose of seeking access to certain documents, but respectfully asks this Court to deny Boney's motion for access to those documents.

Respectfully submitted,

ROY L. AUSTIN
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT
Special Counsel

10

Case 1:12-cv-01349-TDS-JLW   Document 52   Filed 09/30/13   Page 10 of 12

Civil Rights Division

*s/ Michael J. Songer*
MICHAEL J. SONGER
DC Bar Number: 975029
AARON S. FLEISHER
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-6255
Fax: (202) 514-4883
michael.songer@usodj.gov

Attorneys for the United States

## CERTIFICATE OF SERVICE

I certify that the foregoing United States' Response to Motion for Leave to Intervene was served through the electronic filing service on September 30, 2013, which will provide notice to all registered parties.

*s/ Michael J. Songer*
MICHAEL J. SONGER
Attorney for the United States