| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Terry S. Johnson, in his official capacity as | ) |
| Alamance County Sheriff, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF
MOTION TO MODIFY JOINT CONFIDENTIALITY AND PROTECTIVE ORDER**

The Complaint in this case makes damning allegations about the defendant Sheriff Terry Johnson, claiming he has "has engaged in a pattern or practice of discriminatory law enforcement activities directed against Latinos in Alamance County," thus depriving them of their constitutional rights. Complaint ¶ 1. The Complaint alleges that Latinos were targeted "for investigation, detention, and arrest, and []unreasonable seizures." Complaint ¶ 3.

This case is of tremendous, legitimate public concern to the people of Alamance County and the State of North Carolina. For example, the United States claims to have a 2012 statistical study commissioned by the United States Department of Justice ("DOJ") that indicates a Latino driver in Alamance County is "as much as ten times more likely than a similarly situated non-Latino driver to be stopped by an ACSO deputy for committing a traffic infraction." Complaint ¶ 4. The government alleges that "while at a vehicle checkpoint, Defendant Johnson issued instructions to his subordinates to "go out there and get me some of those taco eaters," which his subordinates understood as a directive to target Latinos for arrest." Complaint ¶ 6.

At the joint request of the parties, this Court has entered an order that removes the rights of the people under the North Carolina Public Records Law and jeopardizes the

1

constitutionally protected right of the public to inspect judicial records.  The records and proceedings before the court in this matter are of particular concern to the public because the allegations allege abuse at the hands of government agents, and courts have recognized the rationale for public access to court records is heightened when the government is a party.  *See, e.g., Smith v. United States District Court for Southern Dist.*, 956 F.2d 647, 650 (7th Cir.1992) (appropriateness of making court files accessible is accentuated in cases where the government is a party); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir.1986) (district court must set forth "substantial reasons" for denying requests for access to court materials, and "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.").

LEGAL ARGUMENT

I. The North Carolina Public Records Law Provides A Right of Access, and This Court Should Vacate the Protective Order to the Extent It Purports to Supplant State Law.

The North Carolina Public Records Law defines public records as:

> all documents … made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.

N.C. GEN. STAT. § 132-1(a).  "Agency" includes "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government."  *Id*.  Defendant Sheriff Johnson clearly is a public agency under North Carolina law.

Absent a specific, ***statutory*** exemption, the public has a right to inspect and copy documents made ***or*** received by a public agency in connection with the transaction of public business.  G.S. § 132-6.  *See Virmani v. Presbyterian Health Servs. Corp.,* 350 N.C. 449, 465, 515

2

S.E.2d 675, 686 (1999)("North Carolina's public records act grants public access to documents it defines as 'public records,' absent a specific *statutory* exemption."). Accord *News & Observer Pub. Co., Inc. v. Poole*, 330 N.C. 465, 486, 412 S.E.2d 7, 19 (1992); *Carter-Hubbard Pub. Co., Inc. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006) *writ allowed,* 361 N.C. 218, 642 S.E.2d 246 (2007) and *aff'd sub nom. Carter-Hubbard Publ'g Co., Inc. v. WRMC Hosp. Operating Corp.*, 361 N.C. 233, 641 S.E.2d 301 (2007); *McCormick v. Hanson Aggregates SE., Inc.*, 164 N.C. App. 459, 463-64, 596 S.E.2d 431, 434*,* 359 N.C. 69, 603 S.E.2d 131 (2004); *Gannett Pacific Corp. v. N.C. State Bureau of Investigation,* 164 N.C. App. 154, 156, 595 S.E.2d 162, 164 (2004); *Times-News Pub. Co., Inc. v. State*, 124 N.C. App. 175, 177, 476 S.E.2d 450, 452 (1996).

The definition of "personally identifiable and confidential information" contained in the Joint Confidentiality and Protective Order [Docket Entry 18] is unduly comprehensive and overreaching. North Carolina law sets forth with great specificity and particularity what is confidential under state law and therefore exempt from disclosure. For example, G.S. § 153A-98 provides for the privacy of employee personnel records, and G.S. § 143-518 provides for the confidentiality of medical information. A thorough review of cases reported by Westlaw reveals no authority for a federal court to preempt state law and declare an entire category of documents exempt from the state's public records law. For these reasons, any documents received by the defendant in this litigation are public records that should be disclosed upon request unless they fall within a specific, statutory exemption to the North Carolina Public Records Law.

The analysis of a Florida court is instructive on the interplay between federal and state laws related to records access. In *Hous. Auth. of City of Daytona Beach v. Gomillion*, 639 So. 2d 117, 119 (Fla. Dist. Ct. App. 1994), the court found, "There is no dispute that HUD is an agency

3

within the meaning of the Act and that the requested information could not be obtained by Plaintiff directly from HUD without the written consent of the affected individuals." Nonetheless, the court found that federal privacy laws did not preempt or displace state public records laws and ruled that in the hands of the state public agency, those records – the same records that would be exempt from disclosure from federal agency hands – were public records that must be disclosed. This result would not have obtained if plaintiff's argument were correct that the analysis is as simple as "federal trumps state."

The fact that Sheriff Johnson is a defendant in litigation has no bearing on his obligations under the North Carolina Public Records Law, and he should be relieved of any obligation to withhold from public inspection documents that he has received in connection with this litigation. He must be free to disclose documents created by his office or received by his office unless they otherwise are exempt from disclosure under North Carolina law.

II. <u>DOCUMENTS FILED WITH THE COURT PRESUMPTIVELY ARE PUBLIC, JUDICIAL RECORDS</u>

Distinct from the obligations of the North Carolina Public Records Law, which are imposed on Sheriff Johnson, it is well established that the public enjoys a right of access to judicial records. "[T]he courts of this country recognize a general right to inspect and copy ... judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed.2d 570 (1978). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern … ." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839, 98 S. Ct. 1535, 56 L. Ed.2d 1 (1978). A common law presumption attached to all judicial records, while a First Amendment right attaches to other records. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir.2004); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855

4

F.2d 178, 180 (4th Cir.1988); *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir.2013).

As the Fourth Circuit has written, the value of the public's right to access court proceedings and records "can hardly be overestimated." *United States v. Moussaoui, 65 Fed. Appx.* 881, 885 (4th Cir. 2003). Both parties to this case are public agencies that wield significant power, which makes secrecy all-the-more objectionable. "Courts have also recognized that when cases involve matters of particularly public interest … the rationale for public access is even greater." *Under Seal v. Under Seal*, 27 F.3d 564 (4th Cir. 1994). *See, e.g., United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records"); *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) (rejecting a witness's arguments for sealing because "as a high official in the state's Republican Party, he is a public person and subject to public scrutiny"); *In re WFMJ Broad. Co.*, 566 F. Supp. 1036, 1041 (N.D. Ohio 1993) ("The presumption in favor of access is especially strong in a case where the evidence reveals the actions of public officials.").

There is systemic value in public access to substantive portions of our judicial system. "The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant." *Lewis v. Peyton*, 352 F.2d 791, 792 (4th Cir. 1965); *see also Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000).

The United States Supreme Court has recognized the public benefit of a public and transparent judicial system. "Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their

5

respective functions more responsibly in an open court than in secret proceedings." *Estes v. State of Tex.*, 381 U.S. 532 (1965).

Paragraph 8 which directs the parties to file under seal those documents that have been designated "confidential" is in direct contradiction of the constitutional mandate that this court consider, on a case-by-case basis, any proposed sealing order. The impropriety of this provision is belied by the absurdity that the parties have proposed that newspaper articles be filed under seal. (These motions were mooted by the Court's direction that the documents proposed for filing under seal be withdrawn.)

The Fourth Circuit has squarely addressed the court's role regarding public access to court records and has found that a court must explain the reasons for sealing with "specific findings concerning the interests at stake, a discussion of the applicable constitutional principles, or a consideration of possible alternatives to closure." *In re Washington Post Co.,* 807 F.2d 383, 392 (1986). The Court must not cede the decision-making about public access to either the parties or a one-size-fits-all statutory scheme.

In *In re Knight Publishing Company,* 743 F.2d 231 (4th Cir.1984), the Fourth Circuit articulated the procedures that must be undertaken before records are sealed or proceedings closed. Those procedures were described and applied in North Carolina's most noteworthy case dealing with the subject in a decade. *Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000). The Fourth Circuit Court of Appeals wrote:

> In *Knight*, we explained that, while a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests," the "presumption" in such cases favors public access. *Knight*, 743 F.2d at 235; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Accordingly, before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3)

6

> provide specific reasons and factual findings supporting its decision to seal the
> documents and for rejecting the alternatives. See *Knight*, 743 F.2d at 235- 36;
> see also Stone, 855 F.2d at 181. These procedures "must be followed when a
> district court seals judicial records or documents." *Stone*, 855 F.2d at 179-80,
> 182.

*Id*. at 302. In *Ashcraft*, the Fourth Circuit found, among other things, "no indication that the district court considered less drastic alternatives to sealing the agreement; and the court's sealing order did not identify any specific reasons or recite any factual findings justifying the court's decision to override the public's right of access to the settlement documents." *Id.* at 302-03. Accordingly, the Fourth Circuit found the sealing order void.

In this as in any case, a party seeking to file a document under seal should be required to file a motion to seal and to support that motion with clear and convincing evidence of a compelling governmental interest in secrecy and a demonstration that no less drastic measures could address the need for secrecy. "Only the most compelling reasons justify non-disclosure," *In re Knoxville News-Sentinel Co.,* 723 F.2d 470, 476 (6th Cir. 1983). The issues at stake in this case are compelling, but as the Fourth Circuit has found on similar occasions, even the most difficult cases involving matters of intense national significance can give way to public access and scrutiny. The court must carefully consider any arguments in support of sealing documents and reduce its conclusion to an order with specific findings, balancing the important First Amendment concerns against the need for secrecy.

Just this year, Judge Catherine Eagles considered two cases involving the presumptive right of access to judicial records, and in both cases found that the parties cannot by "consent" or "agreement" determine what documents should or should not be sealed. Rather, the court has an independent obligation to consider the merits of a motion to seal and to make a ruling reflected in specific findings. *Hunter v. Town of Mocksville*, 1:12-CV-333, 2013 WL 4048226 (M.D.N.C. Aug. 9, 2013); *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 729 (M.D.N.C.

7

2013). This procedure should not and cannot be avoided either by agreement of the parties or a prospective, categorical designation by the court.

CONCLUSION

For the reasons outlined above, the Movant respectfully requests the Court to modify the Joint Confidentiality and Protective Order that is in place to accommodate both state law and federal constitutional protections assuring access to state public records and judicial records. Specifically, Movant seeks the following modifications to the order, which are embodied in the proposed order submitted herewith:

1. Modify the definition of "personally identifiable information" in Paragraph 1(d);
2. Eliminate the automatic designation of information as confidential in Paragraph 3(a);
3. Clarify in paragraphs 3 and 5 that the Alamance County Sheriff's Office shall not be restricted in any way in complying with the North Carolina Public Records Law; and
4. Provide in paragraph 8 a constitutionally sound procedure for the proposed filing under seal of documents designated as "confidential."

Respectfully submitted this the 30th day of December, 2013.

STEVENS MARTIN VAUGHN & TADYCH, PLLC

/s/ C. Amanda Martin
C. Amanda Martin
NC State Bar No. 21186
STEVENS MARTIN VAUGHN & TADYCH, PLLC
1101 Haynes Street, Suite 100
Raleigh, NC 27604
Phone: 919-582-2300
Facsimile: 866-593-7695
Email: amartin@smvt.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2013, I electronically filed the foregoing Memorandum in Support of Motion To Modify Joint Confidentiality And Protective Order with the Clerk of Court using the CM/ECF system, which will send notification of such filing as follows:

    S.C. Kitchen (ckitchen@turrentinelaw.com)
    Michael J. Songer ( michael.songer@usdoj.gov)

This the 30th day of December, 2013.

    /s/ C. Amanda Martin
    C. Amanda Martin
    NC State Bar No. 21186
    STEVENS MARTIN VAUGHN & TADYCH, PLLC
    1101 Haynes Street, Suite 100
    Raleigh, NC  27604
    Phone: 919-582-2300
    Facsimile:  866-593-7695
    Email:  amartin@smvt.com

9

Case 1:12-cv-01349-TDS-JLW   Document 75   Filed 12/30/13   Page 9 of 9