IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff;<br><br>    v.<br><br>Terry Johnson, in his official capacity as Alamance County Sheriff,<br><br>                Defendant. | No. 12-cv-1349<br><br>UNITED STATES' RESPONSE TO INTERVENOR'S MOTION TO MODIFY THE JOINT CONFIDENTIALITY AND PROTECTIVE ORDER |

**UNITED STATES' RESPONSE TO INTERVENOR'S MOTION TO MODIFY THE JOINT CONFIDENTIALITY AND PROTECTIVE ORDER**

The United States respectfully asks the Court to deny Intervenor's Motion to Modify the Joint Confidentiality and Protective Order, ECF No. 75. The Protective Order is fully consistent with the Constitutional imperative for public trials. Indeed, the United States strongly supports the public accountability required by an open courtroom at trial and intends to publicly file all materials supporting any dispositive motions in this case. During pretrial discovery, however, courts have wide discretion to fashion protective orders to facilitate the exchange of sensitive information. *See*, *e.g*, *Seattle Times Co., et al. v. Rhinehart, et al.*, 467 U.S. 20, 34 (1984). Intervenor's request to circumscribe the Protective Order to gain access to a wide swath of discovery materials is legally baseless and would expose innocent third parties to reprisal.

In this case, the Court properly entered the Protective Order for good cause pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of various non-parties, including confidential informants, community witnesses, and employees of the Alamance County Sheriff's Office ("ACSO"). *See* Protective Order, ECF No. 18. Such protection is paramount here, where dozens of individuals informed the United States that they fear retaliation for providing information about Sheriff Johnson, multiple ACSO officers testified that they fear losing their jobs, and the FBI is investigating a case of witness intimidation. *See* ECF No. 50 at 2, 9-10.

Intervenor does not seriously dispute the good cause animating the Protective Order. Instead, it urges the Court to chip away at the Protective Order based on two legal theories. Both of these lack merit. First, the North Carolina Public Records Act furnishes no basis for piercing the Protective Order because: (1) that law expressly exempts material subject to protective orders, *see N.C. Gen. Stats. §132-1.9(g)*; and, regardless, (2) protective orders issued by federal courts preempt state open records laws. *See*, *e.g.*, *United States v. Loughner*, 807 F.Supp. 2d 828, 833 (D. Az. 2011). Second, neither the First Amendment nor the common law creates a presumption of public access to materials exchanged during discovery or filed with discovery motions. It is well established that such materials are not "judicial records" to which access rights attach. *See*, *e.g.*, *In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013); *Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 252 (4th Cir. 1988).

Intervenor cites no authority to the contrary. Instead, it relies exclusively on cases dealing with media access to open trial proceedings and access to materials filed to assist the adjudication of substantive rights, such as summary judgment motions or criminal plea hearings. This authority is wholly inapt to the controlling legal principle here: that this Court properly entered a protective order to shield certain materials exchanged during discovery and attached to discovery motions. Accordingly, the United States asks the Court to deny Intervenor's Motion to Modify the Protective Order.

## BACKGROUND

The United States filed suit against Alamance County Sheriff Terry Johnson on December 20, 2012, alleging that ACSO engages in a pattern or practice of intentionally discriminatory policing that targets Latinos in violation of 42 U.S.C. § 14141. Among other things, the United States' Complaint alleges that Defendant Johnson has instructed his employees to target Latinos, and his office discriminates against Latinos through various law enforcement activities, including traffic stops, searches, vehicle checkpoints, and jail booking procedures. *See* Compl., ECF No. 1, at ¶¶23-67.

Discovery in this matter began in March 2013, after the Court approved the parties' Joint Motion for a Protective Order, ECF No.17. The Joint Motion explained that discovery would require "disclosure of information, documents, and/or testimony that may constitute or contain confidential information," and that the parties "desire to facilitate the exchange of confidential information while protecting that information from unauthorized or inappropriate disclosure." ECF No. 17 at 1. To protect witnesses from

3

Case 1:12-cv-01349-TDS-JLW   Document 77   Filed 01/06/14   Page 3 of 15

possible reprisal, the parties have designated as confidential certain personally identifiable information contained in responses to document requests and interrogatories. The parties likewise designated deposition transcripts confidential because they contain personally identifiable information, and have filed under seal exhibits to several discovery motions that contain such information.[1]  *See*, *e.g.*, Def's Opp. to Mot for Reconsideration, ECF No. 38; U.S. Mot. for Reconsideration, ECF No 36.  All of these documents are properly subject to the lawful Protective Order entered by this Court.

## ANALYSIS

This Court entered the Protective Order for good cause to protect the confidentiality of various non-parties identified in discovery materials.  Intervenor makes no serious argument to the contrary.  Rather, Intervenor argues that the Protective Order must yield because it conflicts with two distinct legal regimes:  (1) the North Carolina Public Records Act; and (2) access rights inherent in the common law and the First Amendment.  Both of these rationales are unavailing. [2]

---

[1] Intervenor specifically objects to a newspaper article filed under seal in support of a discovery motion.  *See* ECF No. 75 at 6.  Sealing this item was necessary because, in the context of the motion to which it was attached, publicly filing the article would have revealed the identity of a non-party informant and the identity of her daughter.  Sealing this document merely protected the identity of the innocent non-party in the discovery motion; it has no effect on access to the article generally.  *See Seattle Times*, 467 U.S. at 37 (protective order does not offend First Amendment where it "does not restrict the dissemination of the information if gained from other sources.").

[2] To the extent Boney seeks unfiled documents not covered by the Protective Order from Defendant under the state Public Records Act, it would seem that Defendant can properly refuse disclosure pursuant to the specific exception for trial preparation materials.  *See N.C. Gen. Stat. § 132-1.9(b).*  If there is any dispute over the application of the trial

4

## I. THE COURT ENTERED THE PROTECTIVE ORDER FOR GOOD CAUSE

It is axiomatic that courts have discretion to issue protective orders under Federal Rule of Civil Procedure 26(c) for good cause, in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The ability of courts to issue protective orders to shield discovery "furthers a substantial governmental interest" and is necessary to facilitate robust civil discovery. *Seattle Times,* 467 U.S. at 34 (finding no First Amendment right for media to access civil discovery materials subject to protective order). "Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. . . . discovery also may seriously implicate privacy interest of litigants and third parties." *Id.* at 34-35.

The Protective Order entered by the Court in this case satisfies the good cause standard, as it was entered in response to a joint motion to protect personal information and the identities of various non-parties, including government informants, ACSO employees, and community members. *See, e.g., Haber v. Evans*, 268 F.Supp.2d 507, 512 (E.D. Pa. 2003) (finding good cause for issuance of protective order to redact personally

---

preparation exception, though, that is a dispute on which the United States takes no position, and which seems inappropriate for consideration in this forum. If the Court's Protective Order does not shield the documents from disclosure, any argument over Defendant's obligation to allow access is purely a matter of state law. And Intervenor cannot seek access to documents possessed solely by the United States pursuant to the state Public Records Act, as the Act does not apply to the federal government.

5

identifying information of victims, witnesses, and confidential informants in civil rights case against law enforcement officials, noting especially that "the alleged victims are not responsible for the public attention that the case has received"). The interest in maintaining the privacy and confidentiality of non-party witnesses is particularly acute here, where witnesses have expressed fears of retaliation, such as the loss of jobs, and been subject to reprisal, including a threat serious enough to trigger an FBI investigation, *see* ECF No. 50 at 2-3, 9-10.

The materials designated confidential by the parties fit within the scope of the lawful Protective Order. The parties have only withheld documents, such as deposition transcripts and interrogatory responses, containing personally identifiable information. Withholding these documents during discovery is necessary to achieve the substantial government interest in assuring that witnesses provide information without fear of oppression and retaliation. When filing discovery motions, the parties have only redacted a handful of words that reveal the identity of non-parties and have sealed only certain supporting materials related to those individuals, rather than withholding entire filings. This is precisely the type of withholding contemplated by Rule 26(c). *See*, *e.g.*, *Chicago Tribune Co. v. Bridgestone-Firestone, Inc.*, 263 F.3d 1304, 1307 (11th Cir. 2001) (Observing that it is "commonplace in the federal courts" for parties to stipulate to "a protective order allowing each other to designate particular documents as confidential" under Rule 26(c)).

## II. THERE IS NO BASIS FOR MODIFYING THE PROTECTIVE ORDER

### A. The North Carolina Public Records Law Does Not Apply to Materials Covered by the Court's Protective Order

Intervenor first argues that the Court should "vacate" the Protective Order to the extent it "supplant[s] state law" because "absent a specific, statutory exemption, the public has a right to inspect and copy" documents exchanged in this litigation. ECF No. 75 at 2. But the North Carolina Public Records Act itself contains just such an exemption: it exempts material protected by a court order, like the Protective Order here. *See N.C. Gen. Stats. §132-1.9(g)* ("This section does not require disclosure" of materials "exempted or protected from disclosure by law or by an order issued by a court."). The Public Records Act's express carve-out for judicial orders conclusively establishes that the Act does not compel this Court to modify the Protective Order.

Even if the exemption for court orders did not apply, however, Intervenor's reliance on the Public Records Act would still fail because federal courts have the authority to shield from public disclosure materials that would otherwise be covered by state open records laws. *See Wittenberg v. Winston Salem/Forsyth County Board of Educ.*, No. 1:05CV818, 2009 WL 2566959, at *2 (M.D.N.C. Aug. 19, 2009) (granting parties' motion to seal settlement agreement, notwithstanding the North Carolina Public Records law). Federal courts are not bound by state open records laws when fashioning the scope of protective orders. In a highly analogous case, a federal court in Arizona denied a request by news organizations to modify a protective order to permit the news

7

organizations to access documents that would have been public under Arizona's public records law. The court held that the news organizations had no right of access, noting that "a district court presiding over a federal criminal case isn't bound by a state's public records law." *Loughner*, 807 F.Supp. 2d at 833. While acknowledging that "Arizona's public records law supports the news organizations' side," the court specifically found "that it is not in any way bound by that law." *Id*. at 835. *See also* U.S. Const. Art. VI. cl. 2. The same principle applies here. The Protective Order overcomes any presumption of public access that would otherwise exist under the North Carolina Public Records Law.

The sole authority Intervenor cites for its argument that state public records laws trump federal court orders does not support that proposition. *See* ECF No. 75 a 3-4, citing *Housing Authority of Daytona Beach v. Gomillion*, 639 So. 2d 117 (Fla. Dist. Ct. App. 1994). There, a Florida state court reached the straightforward conclusion that a state housing agency could disclose tenant records because it was not subject to provisions of the Federal Privacy Act, 5 U.S.C. § 552(a). By its terms, the Federal Privacy Act applies only to federal agencies. *Id*. The *Gomillion* decision turned on whether the state housing authority was sufficiently regulated by the federal government to render it a "federal agency" for purposes of the Privacy Act. 639 So. 2d at 119 ("Plaintiff contends that the Federal Privacy Act does not apply at all to the Tenant Records because the records of the [state] Housing Authority are not federal 'agency records' nor are they maintained by a federal 'agency.'"). In other words, *Gomillion* did not involve a conflict between state and federal law. Here, by contrast, this Court's

8

Protective Order expressly applies to the parties in this litigation and thus preempts their obligations under the state Public Records Act.[3]

## B. The First Amendment and Common Law Do Not Create a Right of Access to Materials Exchanged During Pretrial Discovery

Intervenor next seeks to modify the Protective Order based on access rights accorded by the First Amendment and common law. Specifically, Intervenor argues that the Order lacks various procedural requirements for evaluating whether to shield discovery material from disclosure and instead "cede[s] the decision-making about public access to either the parties or a one-size-fits-all statutory scheme." ECF No. 75 at 6. This argument is unavailing, as it confuses "judicial records" like trial and summary judgment materials – to which access rights attach – with the pretrial discovery documents covered by the Protective Order here. In the Fourth Circuit, there is no First Amendment or common law right for a third party to access discovery documents unless the documents are filed with the court as part of a dispositive motion. *See In re Application,* 707 F.3d at 290 (documents are subject to an access right if used to "adjudicate substantive rights"); *Rushford,* 846 F.2d at 252 ("Once the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status of being raw fruits of discovery.").

The Protective Order entered by this Court applies to two categories of materials: (1) documents exchanged during discovery; and (2) documents attached to discovery

---

[3] The Protective Order preempts Defendant Johnson's obligations under the North Carolina Public Records Act. The Act does not apply to the federal government.

9

motions.  The First Amendment and common law access rights do not apply to either category.  Accordingly, there is no basis for modifying the Protective Order.

### 1. *Materials Exchanged During Discovery*

Neither the First Amendment nor the common law creates a public access right in materials exchanged during discovery, such as interrogatory responses and deposition transcripts.  In *Seattle Times*, the Supreme Court held that where "a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pre-trial civil discovery . . . it does not offend the First Amendment." *Id.* at 37.  The Supreme Court similarly observed that discovery materials do not implicate common law access rights, noting that "pretrial depositions and interrogatories are not public components of a civil trial.  Such proceedings were not open to the public at common law . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times*, 467 U.S. at 33.  *See also Bond v. Utreras*, 585 F.3d 1061, 1066 (7th Cir. 2009) ("[T]here is no constitutional or common-law right of public access to discovery materials exchanged by the parties but not filed with the court.  Unfiled discovery is private, not public."); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) ("The results of pretrial discovery may be restricted from the public.").

10

Consequently, the Protective Order properly allows the parties in this litigation to shield from disclosure certain materials exchanged during discovery.

### 2.  *Documents Attached to Discovery Motions*

Intervenor's objection to the Protective Order's provision for filing documents under seal is purely hypothetical, as no documents are currently filed under seal. The parties agreed to withdraw all sealed documents during a motions hearing before the District Court on November 8, 2013. Regardless, documents attached to discovery motions do not constitute judicial records subject to a presumption of public access.

It is well established that documents filed with the court are not considered "judicial records" unless they relate to the adjudication of substantive rights, such as documents attached to a dispositive motion. "[T]he mere filing of a document with a court does not render the document judicial." *Kinetic Concepts, Inc., et al. v. Convatec, Inc., et al.*, No. 1:08CV00918, 2010 WL 1418312, at *7 (M.D.N.C. April 2, 2010) (holding that common law and First Amendment access rights do not apply to documents attached to discovery motions). Rather, "a document becomes a judicial document when a court uses it in determining litigants' substantive rights." *In re Policy Mgt. Sys. Corp.*, 1995 WL 541623 at *4 (4th Cir. 1995). Appellate courts have repeatedly affirmed that filed documents qualify as "judicial records" only if they play a role in the adjudication of substantive rights. *See Rushford* 846 F.2d at 252 ("if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public and not protected. . . ."); *Chicago Tribune Co.,* 263 F.3d at

1312-15 (finding that the "Press's common-law right of access does not extend to the sealed materials submitted in connection with motions to compel discovery" while "discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right"); *Anderson, et al. v. Cryovac, Inc., et al.*, 805 F.2d 1, 11-12 (1st Cir. 1986) ("there is no right of public access to documents considered in civil discovery motions. . . [because] discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access.").

The only documents filed under seal pursuant to the Protective Order in this case relate to discovery motions, not the adjudication of substantive rights. Accordingly, they do not trigger either the First Amendment or common law rights of access.

The cases cited by Intervenor's Motion to Modify the Protective Order are inapposite, as they involve quintessential examples of adjudicating substantive rights. The three principle cases cited by Intervenor underscore this point. *See* ECF No. 75 at 6, discussing *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984); *In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986); and *Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000). *Knight Publishing* involved media access to a closed courtroom during trial; *Washington Post* dealt with access to criminal sentencing and plea hearings; and *Ashcraft* related to disclosure of a final settlement agreement. These cases are inapt here, where the only materials designated confidential by the parties are unfiled discovery materials

12

and documents attached to discovery motions. No presumption of public access applies to such documents.

* * *

Finally, Intervenor cites various cases discussing the "public trial guarantee" and warning against "secret trials." *See* ECF No. 75 at 5. These cases are not relevant to the analysis of the Protective Order here, which facilitates pretrial discovery. Moreover, as discussed above, the United States fully supports a public trial and public filing of all materials supporting dispositive motions in this case. The United States does not interpret the Protective Order to interfere with the public trial guarantee in any way. Nonetheless, the United States would not object to modifying the Order to make clear that it does not apply to summary judgment briefing or trial.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny Intervenor's Motion to Modify the Protective Order.


Respectfully submitted,

ROY L. AUSTIN
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT

Special Counsel
Civil Rights Division

*s/ Michael J. Songer*
MICHAEL J. SONGER
DC Bar Number: 975029
AARON S. FLEISHER
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-6255
Fax: (202) 514-4883
michael.songer@usodj.gov

Attorneys for the United States

**CERTIFICATE OF SERVICE**

I certify that the foregoing United States' Opposition to Intervenor's Motion to Modify the Protective Order was served through the electronic filing service on January 7, 2014, which will provide notice to all registered parties.

*s/ Michael J. Songer*
MICHAEL J. SONGER
Attorney for the United States

15