UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:12-cv-1349

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Terry S. Johnson, in his official capacity as | ) |
| Alamance County Sheriff, | ) |
| | ) |
| Defendant. | ) |

**REPLY TO UNITED STATES' RESPONSE TO INTERVENOR'S MOTION
TO MODIFY THE JOINT CONFIDENTIALITY AND PROTECTIVE ORDER**

The response of the United States, which is neither logical nor persuasive, misses the very essence of Movant's arguments. If the defendant in this lawsuit were a private party and not an agency of the State of North Carolina, the United States' reliance on *Seattle Times Co., et al. v. Rhinehart, et al.*, 467 U.S. 20 (1984), would be relevant. It is not. If the information sought by Movant were "trial preparation material prepared in anticipation of a legal proceeding" that had not been exchanged with opposing counsel, North Carolina General Statute Section 132-1.9 would be relevant. It is not. If the Protective Order under consideration did not ***direct*** the parties to file under seal all confidentially stamped documents, regardless of the constitutional analysis mandated by the First Amendment, it might be a permissible Protective Order. It is not.

The defendant's status as a public agency imposes on the defendant an obligation to provide access to its records, and plaintiff has come forward with no authority for its proposition that any and all federal court orders trump the defendant's obligations under state law. Movant respectfully urges this Court to revisit and re-evaluate the terms of the protective order in place and not be distracted by plaintiff's red herrings.

1

I.  **The North Carolina Public Records Law Provides A Right of Access, and This Court Should Vacate the Protective Order to the Extent It Purports to Supplant State Law.**

Plaintiff makes the naked arguments that "protective orders issued by federal courts preempt state open records laws" and that federal courts "are not bound by state open records laws when fashioning the scope of protective orders." That, however, is not the question at hand. The question is whether a federal court can simply erase a state agency's obligations under state law, and plaintiff has offered no meaningful authority for such a proposition.

The North Carolina Public Records Law, G.S. § 132-1 *et seq.* provides that the public has a right to inspect and copy all documents that are either made or received by a public agency in connection with the transaction of public business. The only exceptions to that rule are those spelled out in statutory exemptions. Perhaps in an effort at smoke and mirrors, the United States has cited the trial preparation exception, but that provision is nothing more than a codification of the common law work product privilege. *See* G.S. § 132-1.9 and *McCormick v. Hanson Aggregates Southeast, Inc.*, 596 S.E.2d 431 (N.C. App. 2004). The trial preparation exemption provides that a public agency need not disclose "trial preparation material that is not also a public record … ." G.S. § 132-1.9(g). Though the statue permits a court to exempt from disclosure trial preparation materials, the very definition of "trial preparation material" is key:

> Any record, wherever located and in whatever form, that is trial preparation material within the meaning of G. S. 1A-1, Rule 26(b)(3), any comparable material prepared for any other legal proceeding, and any comparable material exchanged pursuant to a joint defense, joint prosecution, or joint interest agreement in connection with any pending or anticipated legal proceeding.

G.S. § 132-1.9(h)(2). It is almost laughable for the plaintiff to assert the work product privilege on behalf of defendant, and it is wholly inapplicable to argue that information exchanged

***between*** plaintiff and defendant could ever qualify as work product. The very essence of work product is that it is information or material kept confidential from the opposing party.

Plaintiff's citation to *Wittenberg v. Winston Salem/Forsyth County Board of Educ.*, No. 1:05CV818, 2009 WL 2566959 (M.D.N.C. Aug. 19, 2009), is equally unavailing. The Public Records Law does include exemptions, but our courts have held that those exemptions arise only from statutory authority. This Court, in *Wittenberg,* applied such an exemption -- G.S. § 115C–109.3-- which makes student records confidential. There is no comparable, statutory exemption at issue in this case that would remove materials created or received by the defendant from the ambit of the public records law.

Finally, the Arizona case cited by plaintiff, *U.S. v. Loughner*, 807 F. Supp. 2d 828 (2011), is distinguishable in almost every way from the circumstances of this case. First, the case was a criminal proceeding. Second, as the court in *Loughner* found "fundamental," the records requested were the result of a *joint* investigation by the local and federal law enforcement, which essentially changed the character of the records sought. "Thus, while the news organizations label their request as one for state records, it is more accurately characterized as a request for records pertaining to a federal investigation. 'When federal and state agencies cooperate extensively on a joint investigative task force, the state agencies may be deemed to be 'agents' of the federal government....' *United States v. Cerna*, 633 F. Supp. 2d 1053, 1059 (N.D. Cal. 2009)." *Id.* at 834. Thus, the question in *Laughner* was whether a state public records law compelled a federal investigation to turn over federal records. The answer there was "no," but the facts of this case are fundamentally different. The question here is whether a state public records law persists and compels a state agency to turn over records defined as public by the state public records law. The answer here is "yes."

3

II. <u>The Protective Order in Place Is Not Supported by Good Cause.</u>

As this Court has recognized, "Rule 26(c)'s requirement of a showing of 'good cause' to support the issuance of a protective order ... [and] contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 1:12CV260, 2013 WL 2242988 (M.D.N.C. May 21, 2013). In this case, there is no particularized showing. Rather, the Protective Order permits – and at points requires -- confidential designation of all documents that "contain personally identifiable information." This is the same argument put forth by the plaintiff in its briefing. The fact that a document contains personally identifiable information is not enough, by itself, to justify their confidentiality. Even "general allegations of embarrassment and injury to professional reputations" is insufficient. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 478 (3d Cir. 1995). The party seeking to maintain confidentiality in a document must, when challenged, come forward with particularized evidence that justifies maintaining the confidentiality. Blanket confidentiality orders, such as the protective order in place in this case, are particularly suspect. *See, e.g., San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("Such blanket orders are inherently subject to challenge and modification, as the party resisting disclosure generally has not made a particularized showing of good cause with respect to any individual document."); *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 791 (1st Cir. 1988) (parties must have good cause for maintaining protective order); *Tavoulareas v. Wash. Post Co.*, 737 F.2d 1170, 1172-73 (D.C. Cir. 1984) (motion to modify protective order considered under the good cause standard); *Ballard v. Herzke*, 924 S.W.2d 652, 660 (Tenn. 1996) ("The party seeking to maintain the seal then has the burden of establishing good cause"); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3d Cir. 1994) ("The burden of justifying the confidentiality

4

of each and every document sought to be covered by a protective order remains on the party seeking the order.").

Plaintiff additionally argues that revelation of informants' identities will lead to retaliation. United States' Response To Intervenor's Motion To Modify The Joint Confidentiality And Protective Order, ECF No. 77, p. 6. This argument is nonsensical, however. The defendant – the putative dispenser of retaliation – knows the identity of the informants. Indeed, the defendant knows the identities of all the witnesses and has access to all the information that has been marked "confidential." Only the public is in the dark, without any meaningful knowledge to consider and evaluate the veracity of the witnesses. As the Supreme Court once wrote, "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The public cannot carry out that role, however, in a vacuum or in the dark.

III.  <u>This Court Should Modify The Protective Order To Mandate A Particularized Evaluation Before Any Documents Are Filed Under Seal.</u>

Though there are no documents under seal at this time, the language of the Protective Order as it exists directs the parties to file under seal any documents that have been designated as "confidential." As the Fourth Circuit has written, the value of the public's right to access court proceedings and records "can hardly be overestimated." *United States v. Moussaoui*, 65 Fed. Appx. 881, 885 (4th Cir. 2003). Plaintiff simplistically has characterized the filings to date as "discovery documents," but the exchange in the parties' briefings belies that argument. The matters being considered by this Court are not routine discovery squabbles in the nature of whether a party should be permitted extra time to respond to interrogatories or should be

entitled to additional requests for production. Rather, the documents filed by the parties allegedly support allegations of grievous wrongdoing.

In veiled fashion, the plaintiff has alleged that the defendant has taken specific, retaliatory steps against informants. Plaintiff references, but does not detail, a threat made to a former officer in the Alamance County Sheriff's Office one week after he was identified as a witness in this case. United States' Reply In Support Of Its Motion for Reconsideration of the Magistrate's Order, ECF No. 50, p. 2. Plaintiff describes a patrol car stationed outside one witness' home for long periods of time, prompting her to sell her house and move out of Alamance County and intimidation of the daughter of one witness, trying to force her daughter's school to seize and turn over her daughter's personal computer. *Id.* Plaintiff claims that ACSO deputies threatened to deport one of plaintiff's informants. *Id.* at p. 3.

On the other hand, defendant has alleged that the plaintiff "has acted in bad faith. … Instead of properly complying with the Magistrate's Judge's Order, the Plaintiff has served specious responses which do nothing other than consume counsel's time in reviewing them." ECF No. 47, p. 7-8.

Based on the public record, Movant has no ability to assess the accuracy of the allegations being hurled by both parties in this case, but it is clear these substantial allegations go beyond mere discovery disputes. Both parties to this case are public agencies that wield significant power, which makes secrecy all-the-more objectionable. "Courts have also recognized that when cases involve matters of particularly public interest … the rationale for public access is even greater." *Under Seal v. Under Seal*, 27 F.3d 564 (4th Cir. 1994). *See, e.g., United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records"); *United States v. Smith*, 787 F.2d

6

111, 116 (3d Cir. 1986) (rejecting a witness's arguments for sealing because "as a high official in the state's Republican Party, he is a public person and subject to public scrutiny"); *In re WFMJ Broad. Co.*, 566 F. Supp. 1036, 1041 (N.D. Ohio 1993) ("The presumption in favor of access is especially strong in a case where the evidence reveals the actions of public officials.").

There is systemic value in public access to substantive portions of our judicial system. "The right to a public trial is not only to protect the accused but to protect as much the public's right to know what goes on when men's lives and liberty are at stake, for a secret trial can result in favor to as well as unjust prosecution of a defendant." *Lewis v. Peyton*, 352 F.2d 791, 792 (4th Cir. 1965); *see also Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000).

The United States Supreme Court has recognized the public benefit of a public and transparent judicial system. "Essentially, the public trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Estes v. State of Tex.*, 381 U.S. 532 (1965).

This Court must grapple with and ultimately decide whether the lawyers and witnesses in this case have performed their functions responsibly, and this Court's ruling will be made known to the public. In the words of Chief Justice Burger, though, "it is difficult for [people in an open society] [] to accept what they are prohibited from observing." *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980). Without access to the underlying information and documentation, the public will have little capacity to understand, much less accept, this Court's rulings. As Justice Holmes wrote while sitting on the Supreme Judicial Court of Massachusetts, "Every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Cowley v. Pulsifer*, 137 Mass. 392 (1884) (Holmes, J.). As the Sixth Circuit found, "court records often provide important, sometimes the only, bases or

explanations for a court's decision." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984).

For these reasons, Movant respectfully requests the Court modify those portions of the Protective Order that permit designation of records as confidential merely because they contain personally identifiable information and to vacate those portions of the Protective Order that purport to supplant the defendant's obligations under the North Carolina Public Records Law.

Respectfully submitted this the 14th day of January, 2014.

        STEVENS MARTIN VAUGHN & TADYCH, PLLC

        /s/ C. Amanda Martin
        C. Amanda Martin
        amartin@smvt.com
        N.C. State Bar No. 21186
        Attorneys for Movant
        1101 Haynes Street, Suite 100
        Raleigh, NC 27604
        919.582.2300 telephone
        866.593.7695 facsimile

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of January, 2014, I electronically filed the foregoing Memorandum in Support of Access to Public Records and Judicial Records with the Clerk of Court using the CM/ECF system, which will send notification of such filing as follows:

    S.C. Kitchen (ckitchen@turrentinelaw.com)
    Karlene S. Turrentine (kturrentine@turrentinelaw.com)
    Michael J. Songer ( michael.songer@usdoj.gov)

This the 14th day of January, 2014.

                              /s/ C. Amanda Martin
                              C. Amanda Martin
                              NC State Bar No. 21186
                              STEVENS MARTIN VAUGHN & TADYCH, PLLC
                              1101 Haynes Street, Suite 100
                              Raleigh, NC  27604
                              Phone: 919-582-2300
                              Facsimile:  866-593-7695
                              Email:  amartin@smvt.com