IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | |
| TERRY S. JOHNSON, in his official ) capacity as Alamance County ) Sheriff, ) | 12-CV-1349 |
| Defendant, ) | |
| and ) | |
| BONEY PUBLISHERS, INC., ) | |
| Intervenor. ) | |

## ORDER

The matter is before the Court on Boney Publishers, Inc.'s ("Intervenor") Motion to Modify the Joint Confidentiality and Protective Order. (Docket Entry 74.) Plaintiff United States opposes the Motion. (Docket Entry 77.) Defendant does not oppose Intervenor's Motion, and has not filed a motion in support for or in opposition to its Motion. For the following reasons, the Court denies Intervenor's Motion.

## I. Background

On December 20, 2012, Plaintiff filed this civil action against Defendant, Terry S. Johnson in his official capacity as an Alamance County Sheriff, and requests declaratory and

injunctive relief under 42 U.S.C. § 14141. Plaintiff alleges that Defendant engaged in an intentionally discriminatory pattern of policing that targeted Latinos in Alamance County.

This Court granted the parties' Joint Motion for a Protective Order on April 23, 2012. (Joint Confid. and Protective Order, Docket Entry 18.) The Protective Order explained that discovery documents would include the disclosure of personal information, and in order to facilitate the exchange of such sensitive information, the Order would protect against any unauthorized disclosure. (*Id.* at 1.) The Order defined any documents that contained "personally identifiable information" of non-parties as confidential in order to protect witnesses from possible retaliation from other non-parties. (*Id.* at 2.)

On September 4, 2013, Boney Publishers, Inc. moved to intervene (Docket Entry 42) and on November 14, 2013, the motion was granted. (Docket Entry 67.) Intervenor avers that the Protective Order violates the North Carolina Public Records Law and infringes upon the rights of the public to inspect the records and proceedings before the Court. (Intervenor's Mem. Supp. Mot. to Modify, Docket Entry 75.) Intervenor asks the Court to modify the Protective Order to allow public access to the judicial records. (*Id.* at 8.) Intervenor's argument is simple - any document made or received by a public office is subject to a public right of access codified in the North Carolina Public Records Law. (*Id.* at 2–3.) Therefore, Intervenor argues that because the Alamance County Sheriff's Office ("ACSO") is a public office, "any documents received by the defendants in this litigation are public records that should be disclosed upon request unless they fall within a specific, statutory exemption to the North Carolina Public Records Law." (*Id.* at 3.) Because no

2

statutory exemption applies to these documents, Intervenor concludes that it should be granted access to these documents.

Intervenor further argues that in order to comply with state law and the First Amendment, this Court should modify the Protective Order due to its expansive breadth. Intervenor takes exception to the way in which the Order defines "personally identifiable information" and argues that its reach should be narrowed so as to only cover documents that Plaintiff has shown "clear and convincing evidence of a compelling governmental interest in secrecy." (*Id.* at 7.)

Plaintiff argues that Intervenor's motion should be denied and that "the Protective Order is fully consistent with the Constitutional imperative for public trials" and was entered for good cause. (Pl.'s Resp. in Opp., Docket Entry 77 at 1.) In support of its position, Plaintiff offers a three-fold argument. First, the North Carolina Public Records Act, which Intervenor bases its argument on, "exempts material subject to protective orders." (*Id.* at 2.) Second, that "courts have wide discretion to fashion protective orders to facilitate the exchange of sensitive information" (*id.* at 1) and that the presumption of public access only applies to 'judicial records' of which materials exchanged during discovery or filed with discovery motions are not part. (*Id.* at 2.) Finally, Plaintiff avers that a state's public record laws do not bind the federal judiciary. (*Id.*)

## II. Discussion

As a general rule, federal courts may forbid the disclosure of discovery for good cause by issuing "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This rule "confers broad

3

discretion" to courts when deciding whether to issue a protective order, and "what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Here, the Court issued the Protective Order covering personally identifiable information of non-parties, in order to protect them from retaliation for coming forward as witnesses. Protecting witnesses from retaliation constituted good cause when the Protective Order was granted, and still remains good cause.

Intervenor asserts that the definition in the Protective Order of "personally identifiable and confidential information" is too broad to comport with North Carolina Public Records Law. (Interv. Mem., Docket Entry 75 at 3.) It argues that because of this sweeping language, only a statutory exemption could keep any document received or made by ACSO under seal, but that no such exemption exists. (*Id.*) Plaintiff argues that the North Carolina Public Records laws itself states in N.C. Gen. Stat. § 132-1.9(g) that "it exempts material protected by a court order." (Docket Entry 77 at 7.) However, this section merely grants the courts an exemption from the presumption of public access for documents that are considered work product.[1] The documents Plaintiff wishes to keep under seal are in no way work product related, and thus do not receive the protection from this statutory exemption.

Intervenor next argues that documents filed with the Court are presumptively public records. (Docket Entry 75 at 4.) This presumption does exist, but only for 'judicial records': depositions, interrogatories, or other similar documents transferred between parties that

---

[1] *Wallace Farm, Inc. v. City of Charlotte*, 203 N.C. App. 144, 146–47, 689 S.E.2d 922, 924 (2010).

support dispositive motions adjudicating substantive rights.[2] Documents merely exchanged as part of discovery, and which have not been attached to any dispositive motions, are not 'judicial records'.[3] But once a dispositive motion is filed, the attached documents "lose their status of being raw fruits of discovery." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988). Here, as of this date no dispositive motions, such as motions for summary judgment, have been filed. All of the documents sought by Intervenor are discovery related, and thus the presumption of public access has not attached to any documents at this time.

Intervenor further contends that the First Amendment, as well as the common-law, cast a strong shadow of presumptive public access on all other documents. (Docket Entry 75). However, discovery materials do not implicate this presumption.[4] The Fourth Circuit has "never held that the public has a First Amendment right of access to a pre-trial hearing

---

[2] *See In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013) (documents are subject to public access if used to "adjudicate substantive rights"); *In re Policy Mgmt. Sys. Corp.*, Nos. 94-2254, 94-2341, 67 F.3d 296 (table), 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) ("a document becomes a judicial document when a court uses it in determining litigants' substantive rights"); *In the Matter of Cont'l Ill. Secs. Litig.*, 732 F.2d 1302, 1308–10 (7th Cir.1984) (presumption of public right of access applies to motion to terminate derivative claims).

[3] *See Policy Mgmt.*, 1995 WL 541623, at *3–4 ("[n]either the Supreme Court nor this Court has ever held that the mere filing of a document triggers the First Amendment guarantee of access" and thus "[w]e hold that the mere filing of a document with a court does not render the document judicial").

[4] *See Seattle Times*, 467 U.S. at 37 (generally, a protective order in the context of pre-trial discovery "does not offend the First Amendment"); *Bond v. Utreras*, 585 F.3d 1061, 1066 (7th Cir. 2009) ("no constitutional or common-law right of public access to discovery materials" exists); *Chicago Tribune Co. v. Bridgestone-Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001) ("the Press's common-law right of access does not extend to the sealed materials submitted in connection with motions to compel discovery"); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 12 (1st Cir. 1986) ("discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access"); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (discovery is a private process); *In re Gannett News Serv. Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) ("[t]he results of pretrial discovery may be restricted from the public").

5

Case 1:12-cv-01349-TDS-JLW Document 83 Filed 02/10/14 Page 5 of 8

on a non-dispositive civil motion." *Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 580 (4th Cir. 2004). In that the case, the district court assumed that the public had a First Amendment right of access to pre-trial documents in a civil matter, causing the Fourth Circuit to direct the lower court to "reconsider whether these documents should be accorded First Amendment status." *Id.* at 581. This presumption only exists for judicial records and documents. *Id.* at 575. In addition, courts have recognized that non-party privacy interests outweigh the First Amendment right of public access.[5] Here, because the parties are still in the discovery stages, all documents filed relate to discovery motions and are not yet judicial records. Further, the documents at issue relate to the privacy interests of non-parties. Thus, none of the documents garner a presumptive right of public access stemming from the First Amendment or the common-law.

Additionally, magistrate judges wield broad discretion to grant protective orders during discovery, and may find that the Government's interests outweigh any common-law presumption of public access. *In re Application*, 707 F.3d at 294. Further, the Fourth Circuit has often left for the district courts to decide whether reasons for granting a protective order "justify proscribing the First Amendment right of access to judicial documents." *Rushford*, 846 F.2d at 254. It is the opinion of this Court that the reasons outlined by Plaintiff for protecting the identities of those who have come forward in this case sufficiently justify the proscription of the First Amendment right of public access.

Finally, even if the First Amendment and the common-law did in fact shroud the discovery materials at issue with a strong presumption of public access, this Court would still

---

[5] *See Robinson v. Bowser*, No. 1:12CV301, 2013 WL 3791770, at *3–4 (M.D.N.C. July 19, 2013).

Case 1:12-cv-01349-TDS-JLW   Document 83   Filed 02/10/14   Page 6 of 8

not be bound to modify its Protective Order. The federal judiciary is not constrained in any way by state law requiring public access to documents.[6] Here, Intervenor is similarly situated as the news organization in the Gabby Giffords case; it seeks to modify a protective order in federal court based on its state public records law.[7] Just as the motion was denied in Arizona, it must be denied in North Carolina as well.

## III. Conclusion

Accordingly, **IT IS ORDERED** that Intervenor's Motion to Modify Joint Confidentiality and Protective Order (Docket Entry 74) be **DENIED**. Although the pre-trial discovery documents are not exempted under the North Carolina General Statutes, the documents are not 'judicial records' that garner presumptive public access, nor does state law bind this Court. Thus, this Court had the power to issue the Protective Order, and continues to have the power to uphold it. The Protective Order is, however, **MODIFIED**, in the following ways. Paragraph 3(a) of the Protective Order will no longer implement an automatic confidential designation, but rather it is the responsibility of the parties to seal, redact, and/or designate as confidential any documents they wish to keep from public access due to any "personally identifiable information". Paragraph 8 of the Protective Order only applies to non-judicial records, and does not shield documents used to adjudicate substantive rights or attached to dispositive motions. Upon a proper motion by a party to seal, redact, and/or designate *judicial records* as confidential, a court "must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider

---

[6] *See U.S. v. Loughner*, 807 F.Supp. 2d 828, 835 (D.Ariz. 2011) ("Gabby Giffords case") ("The Court concedes that Arizona's public records law supports the news organizations' side, but also finds that it is not in any way bound by that law").
[7] *See id.* at 833.

7

less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."[8]

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
February 10, 2014

---

[8] *Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000); *see also Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988); *In re Knight Publ'g. Co.*, 743 F.2d 231, 235–36 (4th Cir. 1984).