UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:12-cv-1349

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Terry S. Johnson, in his official capacity as Alamance County Sheriff, | ) ) ) |
| | ) |
| Defendant. | ) |

**INTERVENOR'S OBJECTIONS TO MAGISTRATE JUDGE'S FEBRUARY 10, 2014, ORDER**

COMES NOW, Intervenor, Boney Publishers, Inc., who, pursuant to Fed. R. Civ. P. Rule 72 and Fed. R. Civ. P. 6 (d) timely files its Objections to Magistrate Judge's February 10, 2014, Order.

**I.      Background**

On December 20, 2012, Plaintiff the United States of America filed a civil action against Defendant in his official capacity as Alamance County Sheriff alleging Defendant engaged in discriminatory policing targeting Latinos within the County.

On April 24, 2013, this Court issued a Joint Confidentiality and Protective Order allowing any party to designate as confidential any information that it determined contained personally identifiable or confidential information or information subject to protection under the Privacy Act of 1974, 5 U.S.C. § 552a, or other applicable federal or state law. (Dkt. 18) (the "Protective Order"). The order defined personally identifiable and confidential information to include "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual, and information that can be used to identify an individual as an informant in

1

this matter." *Id.* This included, explicitly, "records maintained by a law enforcement agency or other governmental agency." *Id.* Further, all Alamance County Sheriff's Office ("ACSO") files and any other documents containing personally identifiable information were deemed automatically confidential. *Id.*

On September 4, 2013, Boney Publishers, Inc., moved to intervene. (Dkt. 42). That motion was granted on November 14, 2013. (Dkt. 67).

Intervenor then moved to modify the Protective order on the grounds that the order violates the North Carolina Public Records Law. (Dkt. 75). At that time, Intervenor also argued that the order violated the public's right to judicial records and proceedings. *Id.* The motion sought specific changes in the Protective Order:

> 1. Modify the definition of "personally identifiable information" in Paragraph 1(d);
>
> 2. Eliminate the automatic designation of information as confidential in Paragraph 3(a);
>
> 3. Clarify in paragraphs 3 and 5 that the Alamance County Sheriff's Office shall not be restricted in any way in complying with the North Carolina Public Records Law; and
>
> 4. Provide in paragraph 8 a constitutionally sound procedure for the proposed filing under seal of documents designated as "confidential."[1]

This case is of tremendous, legitimate public concern to the people of Alamance County and the State of North Carolina. For example, the United States claims to have a 2012 statistical study commissioned by the United States Department of Justice ("DOJ") that indicates a Latino driver in Alamance County is "as much as ten times more likely than a similarly situated non-

---

[1] Intervenor accepts the modifications to the Protective Order enacted by Magistrate Webster, eliminating the automatic designation of confidentiality in certain records and clarifying that any party seeking to file a document under seal must satisfy Constitutional requirements to do so. Intervenor urges this Court to make similar modifications to the Protective Order.

Latino driver to be stopped by an ACSO deputy for committing a traffic infraction." Complaint ¶ 4. The government alleges that "while at a vehicle checkpoint, Defendant Johnson issued instructions to his subordinates to "go out there and get me some of those taco eaters," which his subordinates understood as a directive to target Latinos for arrest." Complaint ¶ 6.

The records and proceedings before the court in this matter are of particular concern to the public because the allegations allege abuse at the hands of government agents.

On February 10, 2014, the United States Magistrate Judge denied Intervenor's motion to modify the Protective Order. (Dkt. 83). The Magistrate's order did, however, modify the Protective Order in two ways. *Id.* First, the order altered the automatic confidentiality of records containing personally identifiable information, requiring instead that parties designate confidential records. *Id.* Second, judicial records used to adjudicate substantial rights were removed from the Protective Order's purview, absent public notice, consideration and specific findings by the court permitting confidentiality. *Id.*

Intervenor maintains that records subject to the North Carolina Public Records Law cannot properly be removed from public inspection by a Protective Order and that the modifications made by the Magistrate do not go far enough. For this reason, Intervenor files this objection to the Magistrate's February 10, 2014, Order.

## II.     Standard of Review

A District Court judge may modify or set aside a non-dispositive order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, 230 F.R.D. 438, 447 (M.D.N.C. 2005). Under this standard, the Court will overturn a decision where a review of the record leaves the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

3

### III. The Magistrate Judge's February 10, 2014, Order is Contrary to Law and Should be Set Aside

The North Carolina Public Records Law provides a right of access, and this court should set aside the Magistrate's order and issue an order modifying the Protective Order to the extent it supplants state law.

The North Carolina Public Records Law, N.C. Gen. Stat. § 132-1 *et seq.* provides that the public has a right to inspect and copy all public records. The law defines public records as:

> all documents … made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.

N.C. Gen. Stat. § 132-1(a).

An "agency," under the law, includes "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government." *Id*. Without question, the Alamance County Sheriff's Office is a public agency.

Absent a specific, **statutory** exemption, the public has a right to inspect and copy documents made **or** received by a public agency in connection with the transaction of public business. N.C. Gen. Stat. § 132-6. *See Virmani v. Presbyterian Health Servs. Corp.,* 350 N.C. 449, 465, 515 S.E.2d 675, 686 (1999)("North Carolina's public records act grants public access to documents it defines as 'public records,' absent a specific *statutory* exemption."). Accord *News & Observer Pub. Co., Inc. v. Poole*, 330 N.C. 465, 486, 412 S.E.2d 7, 19 (1992); *Carter-Hubbard Pub. Co., Inc. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006) *writ allowed,* 361 N.C. 218, 642 S.E.2d 246 (2007) and *aff'd sub nom. Carter-Hubbard*

*Publ'g Co., Inc. v. WRMC Hosp. Operating Corp.*, 361 N.C. 233, 641 S.E.2d 301 (2007); *McCormick v. Hanson Aggregates SE., Inc.*, 164 N.C. App. 459, 463-64, 596 S.E.2d 431, 434*,* 359 N.C. 69, 603 S.E.2d 131 (2004); *Gannett Pacific Corp. v. N.C. State Bureau of Investigation,* 164 N.C. App. 154, 156, 595 S.E.2d 162, 164 (2004); *Times-News Pub. Co., Inc. v. State*, 124 N.C. App. 175, 177, 476 S.E.2d 450, 452 (1996).

As the Third Circuit held in *Pansy v. Borough of Stroudsberg*, where the information sought is subject to federal or state public records laws, "a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information. [T]his strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality." 23 F.3d 772, 791 (3d Cir. 1994) (emphasis added). Similarly, in *City of Hartford v. Chase*, the Second Circuit recognized that a federal court may not seal otherwise open government records "without a compelling reason" and without "careful scrutiny and particularized scrutiny." 942 F.2d 130, 135-36 (2d Cir. 1991).

Initially, in its response to Intervenor's motion to intervene, the United States opposed modifying the Protective Order citing the trial preparation exception to the Public Records Law. N.C. Gen. Stat. §132-1.9(g). (Dkt. 52). Subsequently, in its opposition to Intervenor's motion to modify the Protective Order, the United States argued that the Public Records Law exempts material protected by a court order, again citing N.C. Gen. Stat. §132-1.9(g). (Dkt. 77). That provision is nothing more than a codification of the common law work product privilege. *See* N.C. Gen. Stat. § 132-1.9 and *McCormick*, 596 S.E.2d 431. The trial preparation exemption provides only that a public agency need not disclose "trial preparation material that is not also a public record…" N.C. Gen. Stat. § 132-1.9(g). The Magistrate's order correctly concluded that "the documents Plaintiff wishes to keep under seal are in no way work product, and thus do not receive the protection from this statutory exemption." (Dkt. 83).

5

Because Defendant Sheriff Johnson is an "agency" subject to the North Carolina Public Records Law, the Sheriff has an obligation to provide access to all records it makes or receives in connection with public business, provided those documents are not exempted by specific statute. Any documents received by the defendant in this litigation are public records that should be disclosed upon request, as they do not fall within any specific, statutory exemption to the North Carolina Public Records Law.

Accordingly, the Protective Order violates the North Carolina Public Records Law by removing from public inspection and access documents that are public records. N.C. Gen. Stat. § 132-1. Specifically, paragraph 1(d) of the Protective Order defines "Personally Identifiable and Confidential Information" as any information that "can be used to distinguish or trace an individual's identity." Paragraph 5, which prohibits the dissemination of these categories of information or documents without regard to whether they are specifically exempted from disclosure under the North Carolina Public Records Law, is a violation of state law. These definitions and provisions are unduly comprehensive and overreaching. North Carolina law sets forth with great specificity and particularity what is confidential under state law and therefore exempt from disclosure. For example, G.S. § 153A-98 provides for the privacy of employee personnel records, and G.S. § 143-518 provides for the confidentiality of medical information.

Paragraphs 3, 4, 5 and 6 of the Protective Order must also be modified to clarify that a public agency in possession of information that is not confidential under North Carolina state law is permitted to disclose such information consistent with the North Carolina Public Records Law.[2]

---

[2] The Magistrate's order requires designation of confidential records, but does not make clear that records that are public under the North Carolina Public Records Law should not be so designated or that such designation should not impact the ASCO's compliance with North Carolina Law.

The fact that Sheriff Johnson is a defendant in litigation has no bearing on his obligations under the North Carolina Public Records Law, and he should be relieved of any obligation to withhold from public inspection documents that he has received in connection with this litigation. He must be free to disclose documents created by his office or received by his office unless they otherwise are exempt from disclosure under North Carolina law.

Plaintiff makes the argument that "federal courts are not bound by state open records laws when fashioning the scope of protective orders." (Dkt. 77). The Magistrate's order likewise concludes that "the federal judiciary is not constrained in any way by state law requiring public access to documents." (Dkt. 83).

The question at hand is not whether this Court is bound by the state's public records laws. The question is whether a federal court can simply erase a state agency's obligations under state law, and neither the Plaintiff nor the Magistrate has offered meaningful authority for such a proposition.

Both Plaintiff and the Magistrate cite to an Arizona case, *U.S. v. Loughner*, 807 F. Supp. 2d 828 (2011) (the "Gabby Giffords" case) in support of this proposition. In that case, the order directed that the Sheriff "shall not publicly release any investigative reports, files, or materials relating to the investigation of this case..." *Id.*, at 833. The trial court therein found that the news organizations involved in the suit had no enforceable right to access the investigation materials. *Id.* However, The Gabby Giffords case is distinguishable in almost every way from the circumstances of this case.

First, the *Loughner* court found "fundamental" the fact that the records requested were the result of a *joint* investigation by the local and federal law enforcement, which essentially changed the character of the records sought. The court therein wrote:

> This is where the news organizations' invocation of Arizona's public records law, A.R.S. § 39–121, comes in. Their rebuttal is, essentially, that federal law is irrelevant. They seek records compiled by the Sheriff's Department in the course of *its own* investigation of the January 8, 2011 shooting, and under § 39–121, they are entitled to them. (Doc. No. 157–1; Doc. No. 179 at 5–6.)4 But there are a lot of problems with that rebuttal. The biggest one is that there is no such thing, in the first instance, as the Sheriff Department's *own* investigation; from the beginning, the investigation of the January 8 Tucson shootings was a joint effort of the Sheriff's Department, the Federal Bureau of Investigation, and other federal law enforcement agencies. Highlighting the federal government's preeminent involvement in the investigation is the mandate of 18 U.S.C. § 351 that investigations of the attempted murder of a Member of Congress "shall be investigated by the Federal Bureau of Investigation. Assistance may be requested from any Federal, State, or local agency...." 18 U.S.C. § 351(g).

*Id.* at 834 (emphasis in original). The court also explained the significance of the joint investigation. "Thus, while the news organizations label their request as one for *state* records, it is more accurately characterized as a request for records pertaining to a *federal* investigation. 'When federal and state agencies cooperate extensively on a joint investigative task force, the state agencies may be deemed to be 'agents' of the federal government....' *United States v. Cerna*, 633 F. Supp. 2d 1053, 1059 (N.D. Cal. 2009)." *Id*. (emphasis in original).

By contrast, here, there is no joint investigation. There is no investigation covered by the statutorily-imposed preeminence of the federal government. The records sought are not federal investigatory records; they are the public records of a state entity. The state's public records laws should continue to apply to the state agency and should not be suspended merely because the ACSO is involved in litigation.

Second, the Gabby Giffords case dealt exclusively with criminal procedure, which inherently involves different policy considerations for privacy, as well as evidentiary and prosecutorial efficiency. These considerations led the court to conclude that even if it were

"obligated to treat the investigation materials as public records under Arizona law, it would still find that the protective order is justified under Local Rule 57.2(f)8 out of consideration for the defendant's Sixth Amendment right to a fair trial." *Id.*, at 835. In granting a subsequent motion to vacate the same protective order, the *Loughner* Court wrote that the judicial records and federal predominance issues were "accessory points in support of the protective order; they weren't themselves the basis for entering it. Mr. Loughner's right to a fair trial was." *U.S. v. Loughner,* No. 4:11-cr-00187-LABU, Docket No. 496 at 2 (D. Ariz. February 25, 2013). The court also noted that it was taking no position on the status of the materials under Arizona's public records law and that any enduring justification for keeping them from public view was "for an Arizona court to decide." *Id.* at 2-3.

Here, there is no criminal defendant, and there are no Sixth Amendment fair trial concerns. There is no justification for prohibiting access to the records and circumscribing the state's public records law. Even assuming, *arguendo*, such a justification did exist, this Court should, at minimum, modify the protective order to provide for its termination at the close of the case and allow a state court to determine the status of the records.

Third and finally, the Arizona public records law merely *presumes* openness. The law allows for withholding of records upon the government's "specifically demonstrate[ing] how producing the documents would violate rights of privacy or confidentiality, or would be 'detrimental to the best interests of the state.'" *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993). By contrast, North Carolina law does not allow any such showing. The North Carolina Public Records Law makes clear that absent an express statutory exemption from the law, all records made or received in the course of a public agency's operations are subject to public scrutiny. N.C. Gen. Stat. § 132-6. *See Virmani,* 350 N.C. at 465; *Poole*, 330 N.C. at 486; *Carter-Hubbard*, 178 N.C. App. at 624, 633 S.E.2d at 684; *McCormick*, 164 N.C. App. at

9

463-64, 596 S.E.2d at 434; *Gannett Pacific,* 164 N.C. App. at 156, 595 S.E.2d at 164; *Times-News Pub.*, 124 N.C. App. at 177, 476 S.E.2d at 452. There is no statutory exemption applicable in this case.

In sum, because there is no state statutory exemption from the Public Records Law at issue in this case, the records must be open to public inspection. Unlike the Gabby Giffords case cited by the Magistrate, there is no federal statutory authority that would pre-empt the state's public records law at issue. There is no fair trial or jury concern to justify withholding public records from the public's view. Accordingly, the Magistrate Judge's February 10, 2014 order denying modification of the Protective Order is contrary to law.

## CONCLUSION

For these reasons, Movant respectfully objects to the February 10, 2014, Magistrate Judge's Order and requests the Court to accept the two changes made by the Magistrate and further modify the Protective Order. Specifically, Intervenor seeks the following modifications to the original Protective Order:

1. Modify the definition of "personally identifiable information" in Paragraph 1(d);

2. Eliminate the automatic designation of information as confidential in Paragraph 3(a);

3. Clarify in paragraphs 3, 4, 5 and 6 that the Alamance County Sheriff's Office shall not be restricted in any way in complying with the North Carolina Public Records Law; and

4. Provide in paragraph 8 a constitutionally sound procedure for the proposed filing under seal of documents designated as "confidential."

Respectfully submitted this the 24th day of February, 2014.

                                                      STEVENS MARTIN VAUGHN & TADYCH, PLLC

                                                      /s/ C. Amanda Martin
                                                      C. Amanda Martin
                                                      amartin@smvt.com
                                                     N.C. State Bar No. 21186
                                                     Attorneys for Movant
                                                     1101 Haynes Street, Suite 100
                                                     Raleigh, NC 27604
                                                     919.582.2300 telephone
                                                     866.593.7695 facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2014, I electronically filed the foregoing Memorandum in Support of Access to Public Records and Judicial Records with the Clerk of Court using the CM/ECF system, which will send notification of such filing as follows:

    S.C. Kitchen (ckitchen@turrentinelaw.com)
    Michael J. Songer ( michael.songer@usdoj.gov)

This the 24th day of February, 2014.

                                                      /s/ C. Amanda Martin
                                                     C. Amanda Martin
                                                     NC State Bar No. 21186
                                                     STEVENS MARTIN VAUGHN & TADYCH, PLLC
                                                     1101 Haynes Street, Suite 100
                                                     Raleigh, NC 27604
                                                     Phone: 919-582-2300
                                                     Facsimile: 866-593-7695
                                                     Email: amartin@smvt.com