United States of America,

               Plaintiff;

     v.

Terry Johnson, in his official capacity as
Alamance County Sheriff,

            Defendant.

No. 12-cv-1349

UNITED STATES' MOTION FOR
SUMMARY JUDGMENT

# Exhibit 3

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between the United States Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Alamance County, North Carolina (County), and the Sheriff's Office of Alamance County, North Carolina (ACSO) under which ICE authorizes nominated, trained and certified personnel in the ACSO to perform certain immigration enforcement functions as specified herein. The ACSO represents the Alamance County in the implementation and administration of this MOA. It is the intent of the parties that this agreement will result in enhanced capacity to deal with immigration violators in Alamance County.

## I.     PURPOSE

The purpose of this MOA is to set forth the terms and conditions for authorization of selected ACSO personnel (participating ACSO personnel) to perform certain functions of an immigration officer within Alamance County, and how those participating ACSO personnel will be nominated, trained, authorized and supervised in performing the immigration enforcement functions specified in this MOA.   Nothing herein shall otherwise limit the jurisdiction, powers normally possessed by participating ACSO personnel in their capacity as employees of ACSO. However, the exercise of immigration enforcement authority granted under this MOA to participating ACSO personnel shall occur only as provided in this MOA and shall be limited to activities in the County.

## II.    AUTHORITY

Section 287(g) of the Immigration and Nationality Act, 8 U.S.C. § 1357(g), as amended by the Homeland Security Act of 2002, Public Law 107-276, authorizes the Secretary of the Department of Homeland Security to enter into written agreements with a State or any political subdivision of a State so that qualified personnel may perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III.   POLICY

This MOA sets forth the scope of the immigration officer functions that DHS is authorizing the participating ACSO personnel to perform.  It sets forth with specificity the duration of the authority conveyed and the specific lines of authority, including the requirement that participating ACSO Personnel shall be subject to ICE supervision while performing immigration related duties pursuant to this MOA. For the purposes of this MOA, ICE officers will provide supervision for participating ACSO personnel only as to immigration enforcement functions. ACSO retains supervision of all other aspects of the employment of and performance of duties by participating ACSO personnel.

Before participating ACSO personnel will be authorized to perform immigration officer functions granted under this MOA, they must successfully complete mandatory training in the enforcement of federal immigration laws and policies as provided by DHS instructors and pass

examinations equivalent to those given to ICE officers. This MOA further sets forth requirements for regular review of this MOA.

Only Participating ACSO personnel have authority pursuant to this MOA to conduct the immigration officer functions enumerated in this MOA.

The ICE and ACSO points of contact for purposes of this MOA are identified in Appendix A.

IV.    DESIGNATION OF FUNCTIONS

For the purposes of this MOA, the functions that may be performed by participating ACSO personnel with their associated authorities are indicated below:

| AUTHORITY | FUNCTIONS |
|---|---|
| • The power to interrogate any alien or person believed to be an alien as to his right to be or remain in the United States. INA § 287(a)(1) and 8 C.F.R. 287.5(a)(1) | • Interrogate in order to determine probable cause for an immigration violation |
| • The power and authority to administer oaths and to take and consider evidence. INA § 287(b) and 8 C.F.R. 287.5(a)(2) | • Complete required criminal alien processing, to include fingerprinting, photographing, and interviewing for ICE supervisor review<br><br>• Prepare affidavits and take sworn Statements |
| • The power to issue detainers. 8 C.F.R. 287.7 | • Prepare immigration detainers and I-213, record of Deportable/Inadmissible Alien for aliens in categories established by ICE supervisors |

| AUTHORITY | FUNCTIONS |
|---|---|
| • The authority to prepare charging Documents: INA § 239; 8 C.F.R. 239.1; INA § 238; 8 C.F.R 238.1; INA § 241(a)(5); 8 C.F.R 241.8; INA § 235(b)(1); 8 C.F.R. 235.3 | • Prepare a Notice to Appear (NTA) or other removal charging document, as appropriate, including Notice of Intent to Administratively Remove, Notice of Intent to Reinstate Removal, or Notice of Intent to Expeditiously Remove for signature of ICE officer for aliens in categories established by ICE supervisors |
| • Transportation of aliens. INA § 236 | • Transport Aliens |

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating ACSO personnel in exercising these authorities shall be DHS policies and procedures. However, when engaged in immigration enforcement activities, no participating ACSO personnel will be expected or required to violate or otherwise fail to maintain ACSO standards of conduct, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law, or ACSO rules, orders, standards, or policies.

The parties understand that ACSO will not continue to detain an alien after that alien is eligible for release from ACSO custody in accordance with applicable law and ACSO policy, except for a period of up to 48 hours, excluding Saturday, Sunday and any holiday, pursuant to a DHS detainer issued in accordance with 8 C.F.R. § 287.7.

## V.    NOMINATION OF PERSONNEL

The Sheriff of Alamance County will nominate to ICE candidates for initial training and certification under this MOA.

For each candidate nominated, ICE may request any information necessary for a background check and evaluation for suitability to participate in the enforcement of immigration authorities under this MOA. All candidates must be United States citizens. All candidates must have at least two years' work experience as sworn law enforcement officers. No candidate will be married to a person illegally present within the United States or knowingly have family or any other associations which could adversely impact their ability to perform ICE functions under this MOA. All candidates must be approved by ICE and must be able to qualify for appropriate security clearances. Should a candidate not be approved, a substitute candidate may be nominated, so long as the substituted nomination occurs in a timely manner and does not delay the start of training. Any future expansion in the number of participating ACSO personnel or scheduling of additional training classes may be based on an oral agreement of the parties, but will be subject to all the requirements of this MOA.

ACSO will endeavor not to reassign approved candidates from their primary place of duty for a period of at least two years following training and certification of approved candidates as outlined in this MOA. Further, to the extent possible and practicable, ACSO will give ICE sixty-days (60) notice of its intent to reassign any approved candidate.

## VI.    TRAINING OF PERSONNEL

ICE will provide appropriate training of nominated ACSO personnel tailored to the designated immigration functions and types of cases typically encountered by ACSO personnel. Training of such ACSO personnel will be at a mutually designated site, utilizing ICE designated curriculum and competency testing. Training will include presentations on this agreement and elements of this MOA, the scope of immigration officer authority, cross-cultural issues, the ICE Use Of Force Policy, civil rights law, the Department of Justice "Guidance Regarding The Use of Race By Federal Law Enforcement Agencies" dated June 2003, public outreach and complaint procedures, liability, and other relevant issues. ICE will provide the instructors and all training materials. ACSO is responsible for the salaries and benefits, including overtime, for any of its personnel being trained or performing duties under this MOA. ACSO will cover the costs of all candidates' travel, housing and per diem while involved in training required for participation in this agreement.

All nominated and accepted personnel will receive specific training regarding their obligations under federal law and the Vienna Convention on Consular Relations to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating ACSO personnel are trained and certified, unless any party terminates this MOA pursuant to Section XVII below, ICE may provide such personnel with additional updated training on relevant administrative, legal and operational issues related to the performance of immigration officer functions. Local training on relevant administrative, legal and operational issues will be provided on an ongoing and timely basis by ICE supervisors or designated team leader.

## VII. CERTIFICATION AND AUTHORIZATION

The ICE Training Division will certify in writing to the ICE Special Agent in Charge in Atlanta, Georgia, the names of those ACSO personnel who successfully complete training and pass all required testing. Upon receipt of the ICE Training Division certification, the Special Agent in Charge, Atlanta, Georgia, will provide to the participating ACSO personnel a signed authorization to perform specified functions of an immigration officer until termination of this agreement. ICE will also provide a copy of the authorization to ACSO. The ICE staff as addressed in Section IX below will evaluate the activities of all participating ACSO personnel with regard to ICE functions.

Authorization of any participating ACSO personnel to act pursuant to this MOA may be revoked at any time by ICE or ACSO. Such revocation will require immediate notification by the revoking party to ICE or ACSO, as the situation requires. The Sheriff of ACSO or his Chief Deputy and the ICE Special Agent in Charge in Atlanta, Georgia or the Resident Agent in Charge in Cary, North Carolina, will be responsible for notification of the appropriate personnel in their respective agencies. If any participating ACSO personnel become the subject of a complaint of any sort that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation, ACSO shall, to the extent allowed by state law, immediately notify ICE of the complaint. The resolution of the complaint shall be promptly reported to ICE. Complaints regarding exercise of immigration enforcement authority by any participating ACSO personnel shall be handled in accordance with Section XII below. The termination of this MOA shall constitute revocation of all immigration enforcement authorizations conveyed hereunder.

## VIII. COSTS AND EXPENDITURES

Participating ACSO personnel will carry out designated functions at ACSO expense, including salaries and benefits, local transportation, and official issue material. ICE will provide training personnel, training materials and supervision.

ICE aggress to provide the necessary technological support and software and software updates of those systems tied directly into ICE or other federal databases used by ICE to accomplish complete investigations.

This MOA does not constitute an obligation to expend funds by either party. Unless otherwise agreed in writing, each party shall bear any costs it incurs in relation to this MOA. ICE expenditures will be subject to federal budgetary processes and availability of funds pursuant to applicable laws and regulations. The parties expressly acknowledge that this MOA in no way implies that Congress will appropriate funds for such expenditures.

IX.     ICE SUPERVISION

Immigration enforcement activities of the participating ACSO personnel will be supervised and directed by ICE in Cary, North Carolina. Participating ACSO personnel cannot perform any immigration officer functions pursuant to the authorities granted under this MOA except when working under the supervision of ICE. Participating ACSO personnel shall give notice to the ICE as soon as practicable after, and in all cases within 24 hours, of any detainer issued under the authorities set forth in this MOA. ICE will review the actions of participating ACSO personnel on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for additional training or guidance for any individual.

For the purposes of this MOA, ICE will provide supervision of participating ACSO personnel only as to immigration enforcement functions. ACSO retains supervision of all other aspects of the employment of and performance of duties by participating ACSO personnel or any ACSO personnel in the process of training hereunder.

If a conflict arises between an order and direction provided by the ICE supervisory officer and ACSO rules, standards, orders or policies, the conflict shall be promptly reported to the ICE Resident Agent in Charge in Cary, NC, and the Sheriff of ACSO or his designee as soon as circumstances safely allow the concern to be raised. The Resident Agent in Charge and the Sheriff of ACSO or his designee shall attempt to resolve the conflict.

X.      LIABILITY AND RESPONSIBILITY

ICE and ACSO understand and agree that except as otherwise noted in this MOA and allowed by federal law, each will be responsible for their own liability and bear their own costs with regards to property and resources, or personnel expenses incurred by reason of death, injury or incidents giving rise to liability.

Participating ACSO personnel shall not be treated as federal employees except for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 267 1-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq. when performing a function as authorized by this MOA, 8 U.S.C. § 1357(g)(7). It is the understanding of the parties to this MOA, that participating ACSO personnel will have the same immunities and defenses as do ICE officers from personal liability from tort suits based on actions conducted in compliance with this MOA, 8 U.S.C. §

1357(g)(8). ICE will not be responsible for any intentional misconduct on the part of any Participating ACSO personnel.

Participating ACSO personnel who are named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and be presented to the Office of the Chief Counsel, at 77 Forsyth Street, Room 385, Atlanta, Georgia, 30303. Any request for representation must be clearly marked on each written communication that the information is "Subject to Attorney-Client Privilege." The Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit to the ICE Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and a statement of the views of ICE with respect to whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts Staff of the Civil Division of the Department of Justice.

ACSO agrees to cooperate with any federal investigation related to this MOA to the full extent of its available powers. It is understood that information provided by any ACSO personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493. 87 S.Ct. 616, 17 L.Ed.2d 526 (1967).

The Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150. 92 S.Ct. 763. 31 L.Ed.2d 104 (1972), relates to disclosure of potential impeachment information about potential witnesses or affiants in a criminal case or investigation. *See also United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). As the activities of participating ACSO personnel under this MOA are undertaken under federal authority, to the extent participating ACSO personnel are performing services hereunder, unless specifically provided otherwise herein, participating ACSO personnel will comply with federal standards and guidelines relating to such cases.

## XI. CIVIL RIGHTS STANDARDS AND PROVISION OF INTERPRETATION SERVICES

Pursuant to this MOA, participating ACSO personnel will perform certain federal immigration enforcement functions. In doing so, these participating ACSO personnel are bound by all federal civil rights statutes and regulations, as well as policy directives, including the U.S. Department of Justice "Guidance Regarding The Use Of Race By Federal Law Enforcement Agencies" dated June 2003.

Participating ACSO personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by ACSO as needed.

## XII.   COMPLAINT PROCEDURES

The complaint reporting and resolution procedure for allegations of misconduct by participating ACSO personnel or for activities undertaken under the authority of this MOA is included at Appendix B.

## XIII.   REQUIRED REVIEW OF ACTIVITIES

The ICE Assistant Secretary and the Sheriff of ACSO shall establish a steering committee that will meet periodically to review and assess the immigration enforcement activities that have been conducted pursuant to this MOA. The steering committee will meet periodically in North Carolina at locations to be agreed upon by the parties or by teleconference. These reviews are intended to assess the use made of immigration enforcement authority and to ensure compliance with the terms of this MOA. Steering committee participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable and available, statistical information on increased immigration enforcement activity in Alamance County. An initial review meeting will be held no later than nine months after certification of the initial class of Participating ACSO personnel under Section VII, above.

## XIV.   COMMUNITY OUTREACH

ACSO will, in its discretion, engage in community outreach with individuals and organizations expressing an interest in this MOA. ICE may participate in such outreach upon ACSO request.

## XV.   RELATIONS WITH THE NEWS MEDIA

As part of its commitment to the communities it serves, ACSO may at any time and in its discretion, communicate the intent, focus, and purpose of this agreement to the media, organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA.

The parties hereto agree that ACSO and ICE will coordinate any release of information to the media regarding specific actions taken by any party under this MOA. The points of contact for ICE and ACSO for this purpose can be found at Appendix C.

## XVI.   MODIFICATION OF THIS MOA

Any modifications to this MOA must be proposed in writing and approved by the signatories.

## XVII.   DURATION AND TERMINATION OF THIS MOA

This MOA will be in effect from the date of signing until terminated by any party hereto. Any party to this MOA, upon sixty-days (60) prior written notice to the other parties, may terminate it at any time. Such notice shall be delivered personally or by certified or registered mail. Notice of termination or suspension by ICE shall be given to the Sheriff of ACSO. Notice of termination or suspension by ACSO shall be given to the ICE Resident Agent in Charge in Cary, North Carolina.

In the event of an unforeseen emergency or other exigent circumstances, ICE or ACSO may, upon written notice to the other, temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate. ICE and the ACSO must agree in writing to begin activities under this MOA after such suspension.

## XVII.  OTHER PROVISIONS

This MOA is an internal arrangement between the Parties. Except as provided for in Section X, this MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

Nothing in this MOA is intended to conflict with current law or regulation or the directives of Parties. If a term of this MOA is inconsistent with such authority, then the term shall be invalid, but the remaining terms and conditions of this MOA shall remain in full force and effect.

By signing this MOA, each party represents it is fully authorized to enter into this agreement and accepts the terms, responsibilities, obligations and limitations of the Agreement, and agrees to be bound thereto to the fullest extent allowed by law.

Julie L. Myers
Assistant Secretary
U.S. Immigration and Customs Enforcement

1/10/07

Date:

Larry Sharpe, Chairman,
Board of Commissioners
Alamance County, North Carolina

Date: 10/5/06

Terry S. Johnson, Sheriff
Alamance County, North Carolina

Date: 10-02-06

# APPENDIX A

## POINTS OF CONTACT FOR MOA IMPLEMENTATION

As called for in Section III of the MOA, the ICE and ACSO points of contact for purposes of implementation of this MOA are:

For the County:  Terry Johnson, Sheriff
Alamance County Sheriff's Office
109 S. Maple Street
Graham, NC 27253
b6

For ICE:  b6,b7c
Resident Agent in Charge
140 Centrewest Court
Suite 100
Cary, North Carolina 27513
b2Low

# APPENDIX B

## COMPLAINT PROCEDURE

This MOA is a joint agreement between DHS/ICE, the County and the Alamance County Sheriff's Office (ACSO); in which selected ACSO personnel are authorized to perform immigration enforcement duties in specific situations under federal authority. As such, the training, supervision, and performance of participating ACSO personnel pursuant to the MOA, as well as the protections for individuals' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

The MOA sets forth the process for designation, training and certification of designated ACSO personnel to perform certain immigration enforcement functions specified herein. Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of ACSO and be handled in accordance with ACSO policies and procedures. The ACSO will also handle complaints filed against ACSO personnel who may exercise immigration authority, but who are not designated and certified under this MOA. The number and type of the latter complaints will be monitored by the steering committee established under Section XIII of the MOA.

In order to simplify the process for the public, complaints against participating ACSO personnel relating to their immigration enforcement actions can be reported in a number of ways. The ICE Headquarters Office of Professional Responsibility (ICE OPR) and the ACSO Office of Professional Compliance will coordinate complaint receipt and investigation. The ICE OPR will forward complaints to the Department of Homeland Security's Office of Inspector General (DHS OIG) as appropriate for review, and ensure notification as necessary to the U.S. Department of Justice Civil Rights Division (DOJ CRD).

The ICE OPR will coordinate complaints related to participating ACSO personnel with the ACSO OPC as detailed below. Should circumstances warrant investigation of a complaint by the DHS OIG or the DOJ CRD, this will not preclude the DHS OIG, DOJ CRD or ICE OPR from conducting the investigation in coordination with ACSO OPC, when appropriate.

The ICE OPR will adhere to established procedures relating to reporting and resolving allegations of employee misconduct, and the ACSO OPC will follow applicable ACSO policies and procedures, personnel rules, North Carolina statutes and any other guidelines established for operation of the ACSO.

# I. Complaint Reporting Procedures

A. Dissemination of Complaint Reporting Procedures

    Complaint reporting procedures shall be disseminated as appropriate by the ACSO within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures.

B. Acceptance of Complaints

    Complaints will be accepted from any source (e.g., ICE, ACSO, personnel operating under the authority of this MOA, and the public).

C. Reporting Mechanisms

    Complaints can be reported to federal authorities as follows:

        1. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington D.C. at the toll-free number 1-877-246-8253, or

        2. Telephonically to the Office of the Special Agent in Charge of the ICE OPR office in Plantation, Florida, at 954-327-4100; or;

        3. Via mail as follows:

        U.S. Department of Homeland Security
        U.S. Immigration and Customs Enforcement
        Office of Professional Responsibility
        425 I Street, NW
        Room 3260
        Washington, D.C. 20536

        U.S. Immigration and Customs Enforcement
        Office of Professional Responsibility
        425 I Street, NW
        Room 3260
        Washington, D.C. 20536

Complaints can also be referred to and accepted by any of the following ACSO entities:

1. The Sheriff of Alamance County .
   Alamance County Sheriff's Office
   109 South Maple Street
   Graham, North Carolina 27253
   (336) 570-6300

2. Alamance County Sheriff's Office
   Division of Professional Standards (DPS)
   109 South Maple Street
   Graham, North Carolina 27253
   Attention: Major Ron Parrish
   Phone: (336) 570-6311

3. The supervisor of any participating ACSO personnel

D. Review of Complaints

1. All complaints (written or oral) directly reported to ACSO, which involve activities connected to immigration enforcement activities by ACSO authorized under this MOA, will be reported to the ICE OPR. The ICE OPR will verify Participating ACSO Personnel status under the MOA with the assistance of the Resident Agent in Charge of the ICE Office of Investigations in Cary, North Carolina.

2. Complaints received by any ICE entity will be reported directly to the ICE OPR as per existing ICE policies and procedures and shall also be reported to ACSO DPS by the Resident Agent in charge of the ICE Office in Cary, North Carolina.

For both of the above, the ICE OPR, as appropriate, will make an initial determination regarding DHS investigative jurisdiction and refer the complaint to the appropriate office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to the ICE OPR will be shared with the Sheriff of ACSO or his designee, including ACSO DPS, anytime the complaint involves ACSO personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

**II. Complaint Resolution Procedures**

Upon receipt of any complaint, the ICE OPR will undertake a complete review of each

complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above, the ICE OPR will adhere to existing ICE reporting requirements as they relate to the DHS OIG and/or the DOJ CRT. Complaints will be resolved using the existing procedures, supplemented as follows:

A. Referral of Complaints to ACSO DPS

The ICE OPR will refer complaints, as appropriate, involving ACSO personnel to the ACSO DPS for resolution. The ACSO DPS will inform ICE OPR of the disposition and resolution of any complaints referred by ICE OPR.

B. Interim Action Pending Complaint Resolution

Whenever any participating ACSO personnel are under investigation and subject to interrogation by ACSO for any reason that could lead to disciplinary action, demotion, or dismissal, the requirements of all applicable ACSO Manuals or Orders of Policy and Procedure shall be honored and shall be deemed controlling. If appropriate, an individual may be removed from participation in the activities covered under the MOA pending resolution of an inquiry.

C. Time Parameters for Resolution of Complaints

It is expected that any complaint received will be resolved within 90 days; however this will depend upon the nature and complexity of the substance of the complaint.

D. Notification of Resolution of a Complaint

ICE OPR will coordinate with the ACSO DPS to ensure notification as appropriate to the subject(s) of a complaint, regarding the resolution of the complaint.

# APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XV of the MOA, the signatories agree to coordinate any release of information to the media regarding actions taken under this MOA. The points of contact for coordinating such activities are:

For ACSO:

Sheriff Terry Johnson
Alamance County Sheriff's Office
109 South Maple Street
Graham, North Carolina 27253
(336) 570-6311

For ICE:

Public Affairs Officer
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
425 I Street, NW, Room 7232
Washington, DC 20536
(202) 514-2648

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement (MOA) constitutes an agreement between United States Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Sheriff's Office of Alamance County, North Carolina, hereinafter referred to as the "Law Enforcement LEA" (LEA), pursuant to which ICE delegates nominated, trained, certified, and authorized LEA personnel to perform certain immigration enforcement functions as specified herein. It is the intent of the parties that these delegated authorities will enable the LEA to identify and process immigration violators and conduct criminal investigations under ICE supervision, as detailed herein, within the confines of the LEA'S area of responsibility. The LEA and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein.

## I. PURPOSE

The purpose of this collaboration is to enhance the safety and security of communities by focusing resources on identifying and processing for removal criminal aliens who pose a threat to public safety or a danger to the community. This MOA sets forth the terms and conditions pursuant to which selected LEA personnel (participating LEA personnel) will be nominated, trained, and approved by ICE to perform certain functions of an immigration officer within the LEA'S area of responsibility. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating LEA personnel as members of the LEA. However, the exercise of the immigration enforcement authority granted under this MOA to participating LEA personnel shall occur only as provided in this MOA.

## II. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1357(g) (1996), as amended by the Homeland Security Act of 2002, Public Law 107-296, authorizes the Secretary of DHS, acting through the Assistant Secretary of ICE, to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. This MOA constitutes such a written agreement.

## III. POLICY

This MOA sets forth the following: 1) the functions of an immigration officer that DHS is authorizing the participating LEA personnel to perform; 2) the duration of the authority conveyed; 3) the supervisory requirements, including the requirement that participating LEA personnel are subject to ICE supervision while performing immigration-related duties pursuant to this MOA; and 4) program information or data that the LEA is required to collect as part of the operation of the program. For the purposes of this MOA, ICE officers will provide supervision for participating LEA personnel only as to immigration enforcement and/or immigration investigative functions as authorized in this MOA. LEA retains supervision of all other aspects of the employment and performance of duties by participating LEA personnel.

1

Case 1:12-cv-01349-TDS-JLW Document 89-4 Filed 03/03/14 Page 17 of 37

The LEA is expected to pursue to completion all criminal charges that caused the alien to be taken into custody and over which the LEA has jurisdiction.

ICE will assume custody of an alien 1) who has been convicted of a State, local or Federal offense only after being informed by the alien's custodian that such alien has concluded service of any sentence of incarceration; 2) who has prior criminal convictions and when immigration detention is required by statute; and 3) when the ICE Office of Detention and Removal Operations (DRO) Field Office Director (FOD) or his designee decides on a case-by-case basis to assume custody of an alien who does not meet the above criteria.

## IV. DESIGNATION OF AUTHORIZED FUNCTIONS

Approved participating LEA personnel will be authorized to perform immigration officer functions outlined in 287(g)(1) of the INA regarding the investigation, apprehension, or detention of aliens in the United States, subject to the limitations contained in the Standard Operating Procedures (SOP) in Appendix D to this MOA.

## V. DETENTION AND TRANSPORTATION ISSUES

ICE retains sole discretion in determining how it will manage its limited detention resources and meet its mission requirements. ICE Field Office Directors may, in appropriate cases, decline to detain aliens whose detention is not mandated by Federal statute. ICE and the LEA will prioritize the detention of aliens in conformity with ICE detention priorities. ICE reserves the right to detain aliens to the extent provided by law.

If ICE deems it necessary, the LEA may enter into an Inter-Governmental Service Agreement (IGSA) with ICE pursuant to which the LEA will provide, for a reimbursable fee, detention of incarcerated aliens in LEA facilities, upon the completion of their sentences. If ICE and the LEA enter into an IGSA, the LEA must meet the applicable ICE National Detention Standards.

In addition to detention services, if ICE deems it necessary, the IGSA may include a transportation component for the transportation of all incarcerated aliens for a reimbursable fee. Under a transportation IGSA, the LEA will transport all incarcerated aliens in its facilities who are subject to removal, upon completion of their sentences, to a facility or location designated by ICE. Reimbursement to the LEA will occur only when the LEA obtained prior approval of ICE for the transportation. ICE will not reimburse if the LEA did not obtain prior approval from ICE.

The parties understand that the LEA will not continue to detain an alien after that alien is eligible for release from the LEA's custody in accordance with applicable law and LEA policy, except for a period of up to 48-hours, excluding Saturdays, Sundays, and any Federal holiday, pursuant to an ICE detainer issued in accordance with 8 C.F.R. § 287.7, absent an IGSA in place as described above.

Case 1:12-cv-01349-TDS-JLW   Document 89-4   Filed 03/03/14   Page 18 of 37

## VI. NOMINATION OF PERSONNEL

The LEA will nominate candidates for ICE training and approval under this MOA. All candidates must be United States citizens. The LEA is responsible for conducting a criminal background check within the last five years for all nominated candidates. Upon request, the LEA will provide all related information and materials it collected, referenced, or considered during the criminal background check for nominated candidates to ICE.

In addition to the LEA background check, ICE will conduct an independent background check for each candidate. This background check requires all candidates to complete a background questionnaire. The questionnaire requires, but is not limited to, the submission of fingerprints, a personal history questionnaire, and the candidate's disciplinary history (including allegations of excessive force or discriminatory action). ICE reserves the right to query any and every national and international law enforcement database to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. Upon request by ICE, the LEA will provide continuous access to disciplinary records of all candidates along with a written privacy waiver signed by the candidate allowing ICE to have continuous access to his or her disciplinary records.

The LEA agrees to use due diligence to screen individuals nominated for training and agrees that individuals who successfully complete the training under this MOA will perform immigration officer functions authorized under 287(g) of the INA for a minimum of two years. If LEA personnel under consideration are in a bargaining unit, that LEA must, prior to the execution of the MOA, have an agreement with the exclusive representative that allows the designated officers to remain in their position for a minimum of two years. This requirement may be lifted solely at the discretion of ICE for good cause in situations that involve, among other things, imminent promotion, officer career development, and disciplinary actions. Failure by the LEA to fulfill this commitment could jeopardize the terms of this MOA, and ICE reserves the right, under these circumstances, to take appropriate action as necessary, including terminating this MOA.

All LEA candidates shall have knowledge of and have enforced laws and regulations pertinent to their law enforcement activities and their jurisdictions.

In the task force model setting, all LEA task force officer candidates must be sworn/certified officers, must possess arrest authority, must be authorized to carry firearms, and must be employed full-time by their respective LEA. Each LEA candidate must certify that he/she is not prohibited from carrying a firearm pursuant to State or Federal law, including, but not limited to, the Lautenberg Amendment (18 U.S.C. § 922(g)(8) or (9)).

All LEA candidates must be approved by ICE and must be able to qualify for access to appropriate DHS and ICE databases. Should a candidate not be approved, a qualified substitute candidate may be submitted. Such substitution must occur without delaying the start of training. Any future expansion in the number of participating LEA personnel or scheduling of additional training classes may be based on an oral agreement between the parties and is subject to all the requirements of this MOA and the accompanying SOP.

3

## VII. TRAINING OF PERSONNEL

ICE will provide participating LEA personnel with Immigration Authority Delegation Program (IADP) training consistent with the accompanying SOP.

## VIII. CERTIFICATION AND AUTHORIZATION

Before participating LEA personnel receive authorization to perform immigration officer functions granted under this MOA, they must successfully complete the IADP training, as described in the accompanying SOP. The IADP will be provided by ICE instructors who will train participating LEA personnel in the enforcement of Federal immigration laws and policies, the scope of the powers delegated pursuant to this MOA and civil rights and civil liberties practices. Participating LEA personnel must pass an ICE examination after instruction. Upon completion of training, those LEA personnel who pass the ICE examinations shall be deemed "certified" under this MOA.

ICE will certify in writing the names of those LEA personnel who successfully complete training and pass all required test(s). Upon receipt of the certification, the ICE Special Agent in Charge (SAC) and/or FOD in the Atlanta Field Office will provide the participating LEA personnel a signed authorization letter allowing the named LEA personnel to perform specified functions of an immigration officer for an initial period of one year from the date of the authorization. ICE will also provide a copy of the authorization letter to the LEA. Only those certified LEA personnel who receive authorization letters issued by ICE and whose immigration enforcement efforts are subject to a designated ICE supervisor may conduct immigration officer functions described in this MOA.

Along with the authorization letter, ICE will issue the certified LEA personnel official Delegation of Authority credentials. Upon receipt of the Delegation of Authority credentials, LEA personnel will provide ICE a signed receipt of the credentials on the ICE Record of Receipt – Property Issued to Employee (Form G-570).

Authorization of participating LEA personnel to act pursuant to this MOA may be withdrawn at any time and for any reason by ICE or the LEA, and must be memorialized in a written notice of withdrawal identifying an effective date of withdrawal and the personnel to which the withdrawal pertains. Such withdrawal may be effectuated immediately upon notice to the other party. The LEA and the ICE FOD in the Atlanta Field Office will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA shall constitute immediate revocation of all immigration enforcement authorizations delegated hereunder.

The LEA will immediately notify ICE when any certified and/or authorized LEA personnel is no longer participating in the 287(g) program so that appropriate action can be taken, including termination of user account access to DHS and ICE systems.

4

## IX. COSTS AND EXPENDITURES

Participating agencies are responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material. The LEA is responsible for the salaries and benefits, including overtime, of all of its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating LEA personnel while they are receiving training. The LEA will cover the costs of all LEA personnel's travel, housing, and per diem affiliated with the training required for participation in this MOA. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

If ICE determines the training provides a direct service for the Government and it is in the best interest of the Government, the Government may issue travel orders to selected personnel and reimburse travel, housing, and per diem expenses only. The LEA remains responsible for paying salaries and benefits of the selected personnel.

ICE will provide instructors and training materials.

Subject to the availability of funds, ICE will be responsible for the purchase, installation, and maintenance of technology (computer/IAFIS/Photo and similar hardware/software) necessary to support the investigative functions of participating LEA personnel at each LEA facility with an active 287(g) program. Only participating LEA personnel certified by ICE may use this equipment. ICE will also provide the necessary technological support and software updates for use by participating LEA personnel to accomplish the delegated functions. Such hardware, software, and other technology purchased or provided by ICE shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, or when deemed necessary by the ICE FOD in the Atlanta Field Office.

The LEA is responsible for covering all expenses at the LEA facility regarding cabling and power upgrades. If the connectivity solution for the LEA is determined to include use of the LEA's own communication lines - (phone, DSL, site owned T-1/T-3, etc), the LEA will be responsible for covering any installation and recurring costs associated with the LEA line.

The LEA is responsible for providing all administrative supplies, such as paper, toner, pens, pencils, or other similar items necessary for normal office operations. The LEA is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints and flexi cuffs, etc.

Also, if ICE deems it necessary, the LEA will provide ICE, at no cost, with an office within each participating LEA facility for ICE supervisory employees to work.

5

## X. ICE SUPERVISION

Immigration enforcement activities conducted by the participating LEA personnel will be supervised and directed by ICE supervisory officers or designated ICE team leaders. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or guidance of ICE. To establish supervisory and other administrative responsibilities, the FOD will specify the supervisory and other administrative responsibilities in an accompanying agreed-upon SOP.

Participating LEA personnel shall give timely notice to the ICE supervisory officer within 24 hours of any detainer issued under the authorities set forth in this MOA. The actions of participating LEA personnel will be reviewed by ICE supervisory officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual training or guidance.

For purposes of this MOA, ICE officers will provide supervision of participating LEA personnel only as to immigration enforcement functions and for investigations conducted in conjunction to this authority. The LEA retains supervision of all other aspects of the employment of and performance of duties by participating LEA personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating LEA personnel in exercising these authorities shall be DHS and ICE policies and procedures, including the ICE Use of Force Policy. However, when engaged in immigration enforcement activities, no participating LEA personnel will be expected or required to violate or otherwise fail to maintain the LEA's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE supervisory officer or a DHS or ICE policy and the LEA's rules, standards, or policies, the conflict shall be promptly reported to the FOD in the Atlanta Field Office, or designees, and the LEA, or designee, when circumstances safely allow the concern to be raised. The FOD in the Atlanta Field Office and the LEA shall attempt to resolve the conflict.

## XI. REPORTING REQUIREMENTS

ICE does not require the LEA to provide statistical or arrest data above what is entered into ENFORCE; however, ICE reserves the right to request the LEA provide specific tracking data and/or any information, documents, or evidence related to the circumstances of a particular alien's arrest. ICE may use this data to compare and verify ICE's own data, and to fulfill ICE's statistical reporting requirements, or to assess the progress and success of the LEA's 287(g) program.

## XII. LIABILITY AND RESPONSIBILITY

If any participating LEA personnel are the subject of a complaint of any sort that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation

or civil lawsuit, the LEA shall, to the extent allowed by State law, immediately notify the local point of contact for the ICE Office of Professional Responsibility (OPR) and the FOD of the existence and nature of the complaint. The resolution of the complaint shall also be promptly reported to ICE. Complaints regarding the exercise of immigration enforcement authority, as specified herein, by participating LEA personnel shall be handled as described below.

Except as otherwise noted in this MOA or allowed by Federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the LEA will be responsible and bear the costs of participating LEA personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating LEA personnel will be treated as Federal employees only for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. It is the understanding of the parties to this MOA that participating LEA personnel will enjoy the same defenses and immunities for their in-scope acts that are available to ICE officers from personal liability arising from tort lawsuits based on actions conducted in compliance with this MOA. 8 U.S.C. § 1357(g)(8).

Participating LEA personnel named as defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. Such requests must be made in writing directed to the Attorney General of the United States, and will be handled in coordination with the FOD in the Atlanta Field Office. Requests should be in the form of a written memorandum prepared by the defendant addressing each and every allegation in the complaint, explaining as well as admitting or denying each allegation against the defendant. Requests for representation must be presented to the ICE Office of the Chief Counsel at 180 Spring Street, SW Suite 332, Atlanta, GA 30303. Any request for representation and related correspondence must be clearly marked "Subject to Attorney-Client Privilege." The Office of the Chief Counsel will forward the individual's request, together with a memorandum outlining the factual basis underlying the event(s) at issue in the lawsuit, to the ICE Headquarters Office of the Principal Legal Advisor, which will forward the request, the factual memorandum, and an advisory statement opining whether such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Torts Staff, Civil Division, Department of Justice. ICE will not be liable for defending or indemnifying acts of intentional misconduct on the part of participating LEA personnel.

The LEA agrees to cooperate with any Federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, and documents. Failure to do so may result in the termination of this MOA. Failure of an officer to cooperate in any Federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The LEA agrees to cooperate with Federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any LEA personnel under threat of disciplinary action in an administrative investigation cannot be used against that

individual in subsequent criminal proceedings, consistent with <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967), and its progeny.

As the activities of participating LEA personnel under this MOA are undertaken under Federal authority, the participating LEA personnel will comply with Federal standards and guidelines relating to the Supreme Court's decision in <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and its progeny, which relates to the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, as applicable, and related system of records notices with regard to data collection and use of information under this MOA. The applicable Systems of Record Notice for privacy compliance is the ENFORCE Systems of Records Notice, 71 FR 13987, dated March 20, 2006.

## XIII. COMPLAINT PROCEDURES

The complaint reporting procedure for allegations of misconduct by participating LEA personnel, with regard to activities undertaken under the authority of this MOA, is included in Appendix B.

## XIV. CIVIL RIGHTS STANDARDS

Participating LEA personnel are bound by all Federal civil rights laws, regulations, guidance relating to non-discrimination, including the U.S. Department of Justice "Guidance Regarding The Use Of Race By Federal Law Enforcement Agencies" dated June 2003 and Title VI of the Civil Rights Act of 1964, as amended, 42. U.S.C. 2000 et. seq., which prohibits discrimination based upon race, color, or national origin (including limited English proficiency) in any program or activity receiving Federal financial assistance.

## XV. INTERPRETATION SERVICES

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the LEA, as needed.

The LEA will maintain a list of qualified interpreters or companies it contracts with to provide such interpreters. Participating law enforcement personnel will be instructed on the proper administrative procedures to follow to obtain the services of an interpreter. A qualified interpreter means an interpreter who can interpret effectively, accurately, and impartially, using any specialized vocabulary. If an interpreter is used when a designated officer is performing functions under this MOA, the interpreter must be identified, by name, in records.

## XVI. COMMUNICATION

The ICE FOD in the Atlanta Field Office, and the LEA shall meet at least annually, and as needed, to review and assess the immigration enforcement activities conducted by the

participating LEA personnel, and to ensure compliance with the terms of this MOA. When necessary, ICE and the LEA may limit the participation of these meetings in regards to non-law enforcement personnel. The attendees will meet in the Atlanta Field Office at locations to be agreed upon by the parties, or via teleconference. The participants will be supplied with specific information on case reviews, individual participants' evaluations, complaints filed, media coverage, and, to the extent practicable, statistical information on immigration enforcement activity in the Atlanta Field Office. An initial review meeting will be held no later than nine months after certification of the initial class of participating LEA personnel under Section VIII, above.

## XVII. COMMUNITY OUTREACH

The LEA may, at its discretion, engage in community outreach with individuals and organizations expressing an interest in this MOA. ICE may participate in such outreach upon the LEA's request. Nothing in this MOA shall limit ICE's own community outreach program.

## XVIII. RELEASE OF INFORMATION TO THE MEDIA AND OTHER THIRD PARTIES

The LEA may, at its discretion, communicate the substance of this agreement to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the LEA is authorized to do the same.

Except as provided herein or in any appendices hereto, the LEA hereby agrees to coordinate with ICE prior to releasing any information relating to or exchanged under this MOA. Except as provided herein or in any appendices hereto, information obtained or developed as a result of this MOA is under the control of ICE and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations, and executive orders. Insofar as any documents created by the LEA contain information developed or obtained as a result of this MOA, such documents shall not be considered public records, except as provided herein or in any appendices hereto.

Except as provided herein, the release of statistical information regarding the 287(g) program must be coordinated with the ICE Office of Public Affairs and the LEA hereby agrees to coordinate with ICE regarding information to be released to the media regarding actions taken under this MOA. In the task force model setting, all contact with the media involving investigations conducted under this MOA by Task Force Officers (TFO) will be done pursuant to ICE policy. The points of contact for ICE and the LEA for this purpose are identified in Appendix C.

9

It is specifically understood that notwithstanding any other term or provision of this MOA or any appendices thereto, nothing shall prohibit the LEA from making disclosures or providing information or documents to any party as required by applicable law. It is also specifically understood that notwithstanding any other terms or provisions of this MOA or any appendices thereto, the LEA is allowed to provide general statistical information to the North Carolina Sheriffs' Association, to any regulatory or accreditation entity having authority over the LEA, or to the general public. In addition, the LEA is allowed to provide any information generally provided in any database maintained by the LEA that is available to the general public under applicable state law.

Appendix B to this MOA describes the complaint procedures available to members of the public regarding actions taken by participating LEA personnel pursuant to this agreement.

## XIX.  MODIFICATIONS TO THIS MOA

Modifications to this MOA must be proposed in writing and approved and signed by the signatories. Modification to Appendix D shall be done in accordance with the procedures outlined in the SOP.

## XX.  POINTS OF CONTACT

ICE and LEA points of contact for purposes of this MOA are identified in Appendix A. Points of contact (POC) can be updated at any time by providing a revised Appendix A to the other party to this MOA.

## XXI.  DURATION AND TERMINATION OF THIS MOA

This MOA will remain in effect for three (3) years from the date of signing unless terminated earlier by either party. At the expiration of the three year effective period, ICE and the LEA shall review the MOA and modify, extend, or permit the MOA to lapse. During the MOA's effective period, either party, upon written notice to the other party, may terminate the MOA at any time. A termination notice shall be delivered personally or by certified or registered mail and termination shall take effect immediately upon receipt of such notice.

Either party, upon written or oral notice to the other party, may temporarily suspend activities under this MOA when resource constraints or competing priorities necessitate such suspension. Notice of termination or suspension by ICE shall be given to the LEA.

Notice of termination or suspension by the LEA shall be given to the FOD in the Atlanta Field Office. Upon a good faith determination that the LEA is not fulfilling its duties, ICE shall notify the LEA, in writing, and inform the LEA that it has 90 days to demonstrate a continued need for 287(g) program services. If this continued need is not demonstrated by the LEA, the authorities and resources given to the LEA pursuant to this MOA will be terminated or suspended. Upon a subsequent demonstration of need, all costs to reinstate access to such authorities and/or program services will be incurred by the LEA.

Case 1:12-cv-01349-TDS-JLW  Document 89-4  Filed 03/03/14  Page 26 of 37

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: OCT 15 2009

John Morton
Assistant Secretary
Immigration and Customs Enforcement
Department of Homeland Security

Date: October 13, 2009

Sheriff Terry Johnson
Alamance County Sheriff's Office
Graham, NC

11

# APPENDIX A

## POINTS OF CONTACT

The ICE and LEA points of contact for purposes of implementation of this MOA are:

For the LEA:        Terry Johnson, Sheriff
Alamance County Sheriff's Office
109 S. Maple Street
Graham, NC 27253
(336) 570- [b6]

For ICE DRO:      [b6,b7c]
Assistant Field Office Director (Acting)
6130 Tyvola Centre Drive
Charlotte, NC 28217
(704) 672- [b6,b7c]

**12**

## APPENDIX B

## COMPLAINT PROCEDURE

This Memorandum of Agreement (MOA) is between the US Department of Homeland Security's Immigration and Customs Enforcement (ICE) and the Sheriff's Office of Alamance County, North Carolina, hereinafter referred to as the "Law Enforcement Agency" (LEA), pursuant to which selected LEA personnel are authorized to perform immigration enforcement duties in specific situations under Federal authority. As such, the training, supervision, and performance of participating LEA personnel pursuant to the MOA, as well as the protections for U.S. citizens' and aliens' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through these complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

The MOA sets forth the process for designation, training, certification, and authorization of certain LEA personnel to perform certain immigration enforcement functions specified herein. Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of the LEA and be handled in accordance with the LEA's Manual of Policy and Procedures, or equivalent rules, regulations, or procedures.

If any participating LEA personnel are the subject of a <u>complaint or allegation involving the violation of the terms of this MOA or a complaint or allegation of any sort</u> that may result in that individual receiving employer discipline or becoming the subject of a criminal investigation or civil lawsuit<u>, the LEA shall, to the extent allowed by State law, immediately notify ICE of the existence and nature of the complaint or allegation. The results of any internal investigation or inquiry connected to the complaint or allegation and the resolution of the complaint shall also be promptly reported to ICE.</u> The ICE notifications should be made to the SAC and the Office of Professional Responsibility (OPR) points of contact in the Atlanta Field Office. Complaints regarding the exercise of immigration enforcement authority by participating LEA personnel shall be handled as described below.

The LEA will also handle complaints filed against LEA personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Further, any such complaints regarding non-designated LEA personnel shall be forwarded to the FOD in the Atlanta Field Office.

In order to simplify the process for the public, complaints against participating LEA personnel relating to their immigration enforcement can be reported in the following manner "<u>Complaint and Allegation Reporting Procedures</u>."

13

## 1. Complaint and Allegation Reporting Procedures

Complaint reporting procedures shall be disseminated by the LEA within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that individuals are aware of the availability of such procedures. Such reporting procedures shall also be included within facility manuals for detainees who have been processed under the 287(g) program. Such material must include up-to-date contact information necessary to file the complaint.

Complaints will be accepted from any source (e.g., ICE, LEA, participating LEA personnel, inmates, and the public). ICE will immediately forward a copy of the complaint to the DHS Office for Civil Rights and Civil Liberties (CRCL) Review and Compliance.

Complaints can be reported to Federal authorities as follows:

    A. Telephonically to the DHS Office of the Inspector General (DHS OIG) at the toll free number 1-800-323-8603, or

    B. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington, D.C., at the toll-free number 1-877-246-8253, email Joint.Intake@dhs.gov, or

    C. Via mail as follows:
        Department of Homeland Security
        Immigration and Customs Enforcement
        Office of Professional Responsibility
        P.O. Box 14475
        Pennsylvania Avenue NW
        Washington D.C. 20044

## 2. Review of Complaints

All complaints or allegations (written or oral) reported to the LEA directly that involve LEA personnel with ICE delegated authority will be reported to ICE OPR. ICE OPR will verify participating personnel status under the MOA with the assistance of the SAC of the ICE Office of Investigations in the Atlanta Field Office. Complaints received by any ICE entity will be reported directly to ICE OPR as per existing ICE policies and procedures.

ICE OPR, as appropriate, will make an initial determination regarding ICE investigative jurisdiction and refer the complaint to the appropriate ICE office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to ICE OPR will be shared with the LEA's Internal Investigations Unit when the complaint involves LEA personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

14

3. Complaint and Allegations Resolution Procedures

Upon receipt of any complaint or allegation, ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. As stated above, the ICE OPR will adhere to the reporting requirements as stated above and as they relate to the DHS OIG and CRCL and/or the DOJ CRD. Complaints will be resolved using the existing procedures, supplemented as follows:

> A. Referral of Complaints or Allegations to the LEA's Internal Investigations Unit.
>
> The ICE OPR will refer complaints, as appropriate, involving LEA personnel to the LEA's Internal Investigations Unit for resolution. The facility commander will inform ICE OPR of the disposition and resolution of any complaints or allegations against LEA's participating officers.
>
> B. Interim Action Pending Complaint Resolution
>
> When participating LEA personnel are under investigation for any reason that could lead to disciplinary action, demotion, or dismissal, or are alleged to have violated the terms of this MOA, ICE may revoke that individual's authority and have that individual removed from participation in the activities covered under the MOA.
>
> C. Time Parameters for Resolution of Complaints or Allegations
>
> It is expected that any complaint received will be resolved within 90 days of receipt. However, this will depend upon the nature and complexity of the substance of the complaint itself.
>
> D. Notification of Resolution of a Complaint or Allegation
>
> ICE OPR will coordinate with the LEA's Internal Investigations Unit to ensure notification as appropriate to the ICE SAC in the Atlanta Field Office, the subject(s) of a complaint, and the person filing the complaint regarding the resolution of the complaint.

These Complaint Reporting and Allegation Procedures are ICE's internal policy and may be supplemented or modified by ICE unilaterally, ICE will provide LEA with written copies of any such supplements or modifications. These Complaint Reporting and Allegation Procedures apply to ICE and do not restrict or apply to other investigative organizations within the federal government.

15

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section XVIII of this MOA, the signatories agree to coordinate appropriate release of information to the media regarding actions taken under this MOA before any information is released. The points of contact for coordinating such activities are:

For the LEA:

Public Affairs Officer Lt. Randy Jones
Alamance County Sheriff's Office
109 S. Maple Street
Graham, NC 27253
Office:  (336) 570-6313
Email:  randy.jones@alamance-nc.com

For ICE:

Public Affairs Officer Ivan L. Ortiz-Delgago
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
San Juan, Puerto Rico 00908
Office:  (787) 729-5196
Mobile:  (787) 370-8123
Email:  ivan.ortiz@dhs.gov

## APPENDIX D

## STANDARD OPERATING PROCEDURE (SOP) TEMPLATE

The purpose of this appendix is to establish standard, uniform procedures for the implementation and oversight of the 287(g) delegation of authority program within the Field Office Director (FOD) area of responsibility. This appendix can only be modified in writing with mutual acceptance of the FOD, Alamance County Sheriff, and the OSLC/OPLA.

There are two models for the 287(g) program, a Task Force Officer (TFO) model or a Detention model. Pursuant to this MOA, LEA has been delegated authorities under the Detention model as outlined below.

Prioritization:

ICE retains sole discretion in determining how it will manage its limited resources and meet its mission requirements. To ensure resources are managed effectively, ICE requires the LEA to also manage its resources dedicated to 287(g) authority under the MOA. To that end, the following list reflects the categories of aliens that are a priority for arrest and detention with the highest priority being Level 1 criminal aliens. Resources should be prioritized to the following levels:

> ☐ **Level 1** – Aliens who have been convicted of or arrested for major drug offenses and/or violent offenses such as murder, manslaughter, rape, robbery, and kidnapping;
> ☐ **Level 2** – Aliens who have been convicted of or arrested for minor drug offenses and/or mainly property offenses such as burglary, larceny, fraud, and money laundering; and
> ☐ **Level 3** – Aliens who have been convicted of or arrested for other offenses.

ICE requires that the LEA prioritize its resources dedicated to 287(g) authority under the MOA in the same order of priority that ICE manages its resources. However, nothing in the MOA or any appendices to the MOA shall require the LEA to deviate from standard LEA arrestee screening functions, including screening any arrestees for country of birth and citizenship, regardless of the level of charge against such individual.

Training:

The 287(g) training program, the **Immigration Authority Delegation Program (IADP),** will be taught by ICE instructors and tailored to the immigration functions to be performed. ICE Office of Training and Development (OTD) will proctor examinations during the IADP. The LEA nominee must pass each examination with a minimum score of 70 percent to receive certification. If the LEA nominee fails to attain a 70 percent rating on an examination, the LEA nominee will have one opportunity to remediate the testing material and re-take a similar examination. During the entire duration of the IADP, the LEA nominee will be offered a maximum of one remediation examination. Failure to achieve a 70 percent on any two examinations (inclusive of any remediation examination), will result in the disqualification of the LEA nominee and their discharge from the IADP.

17

Training will include, among other topics: (i) discussion of the terms and limitations of this MOA; (ii) the scope of immigration officer authority; (iii) relevant immigration law; (iv) the ICE Use of Force Policy; (v) civil rights laws; (vi) the U.S. Department of Justice "Guidance Regarding the Use Of Race By Federal Law Enforcement Agencies," dated June 2003; (vii) public outreach and complaint procedures; (viii) liability issues; (ix) cross-cultural issues; and (x) the obligation under Federal law and the Vienna Convention on Consular Relations to make proper notification upon the arrest or detention of a foreign national.

Approximately one year after the participating LEA personnel are trained and certified, ICE may provide additional updated training on relevant administrative, legal, and operational issues related to the performance of immigration officer functions. Local training on relevant issues will be provided as needed by ICE supervisors or designated ICE team leaders. An OSLC designated official shall, in consultation with OTD and local ICE officials, review on an annual basis and, if needed, refresh training requirements.

Trained LEA personnel will receive, as needed, a DHS email account and access to the necessary DHS applications. The use of the information technology (IT) infrastructure and the DHS/ICE IT security policies are defined in the Interconnection Security Agreement (ISA). The ISA is the agreement between ICE Chief Information Security Officer (CISO) and LEA Designated Accreditation Authority (DAA). LEA agrees that each of its sites using ICE-provided network access or equipment will sign the ISA, which defines the IT policies and rules of behavior for each user granted access to the DHS network and applications. Failure to adhere to the terms of the ISA could result in the loss of all user privileges.

Data Collection:

ENFORCE is the primary processing system for alien removals and is the main resource for statistical information for the 287(g) program. All ENFORCE entries must be completed in accordance with established ICE polices and adhere to OSLC guidance.

ICE does not require the LEA to provide statistical or arrest data above what is entered into ENFORCE; however, ICE reserves the right to request specific tracking or arrest data be maintained and provided for comparison and verification with ICE's own data and statistical information. This data may also be used for ICE's statistical reporting requirements or to assess the progress and success of the LEA's 287(g) program.

The LEA and ICE are each responsible for compliance with the Privacy Act of 1974, as applicable, and related system of records notices with regard to data collection and use of information under this MOA. The applicable Systems of Record Notice for privacy compliance is the ENFORCE Systems of Records Notice, 71 FR 13987, dated March 20, 2006.

18

## DETENTION MODEL:

Participating LEA personnel performing immigration-related duties pursuant to this MOA will be LEA officers assigned to detention operations supported by ICE. Those participating LEA personnel will exercise their immigration-related authorities only during the course of their normal duties while assigned to LEA jail/correctional facilities. Participating LEA personnel will identify and remove criminal aliens that reside within the LEA's jurisdiction pursuant to the tiered level of priorities set forth in Appendix D's "Prioritization" section.

The participating LEA personnel are authorized to perform the following functions as allowed by 287(g) of the INA for the Detention Model:

- The power and authority to interrogate any person believed to be an alien as to his right to be or remain in the United States (INA § 287(a)(1) and 8 C.F.R. § 287.5(a)(1)) and to process for immigration violations any removable alien or those aliens who have been arrested for violating a Federal, State, or local offense;

- The power and authority to serve arrest warrants for immigration violations pursuant to INA § 287(a) and 8 C.F.R. § 287.5(e)(3);

- The power and authority to administer oaths and to take and consider evidence (INA § 287(b) and 8 C.F.R. § 287.5(a)(2)), to complete required criminal alien processing, including fingerprinting, photographing, and interviewing of aliens, as well as the preparation of affidavits and the taking of sworn statements for ICE supervisory review;

- The power and authority to prepare charging documents (INA § 239, 8 C.F.R. § 239.1; INA § 238, 8 C.F.R § 238.1; INA § 241(a)(5), 8 C.F.R § 241.8; INA § 235(b)(1), 8 C.F.R. § 235.3) including the preparation of a Notice to Appear (NTA) application or other charging document, as appropriate, for the signature of an ICE officer for aliens in categories established by ICE supervisors;

- The power and authority to issue immigration detainers (INA § 236, INA § 287, and 8 C.F.R. § 287.7) and I-213, Record of Deportable/Inadmissible Alien, for processing aliens in categories established by ICE supervisors; and

- The power and authority to detain and transport (INA § 287(g)(1) and 8 C.F.R. § 287.5(c)(6)) arrested aliens subject to removal to ICE-approved detention facilities.

As noted under Appendix D's "Prioritization" section, ICE requires the LEA to focus its use of the 287(g) program in accord with ICE's priorities.

ICE does not currently deem that an IGSA is necessary with [jurisdiction] nor does ICE envision the necessity of such IGSA in the near future. If ICE does make a future determination that an IGSA is necessary with [jurisdiction], ICE will consult with LEA and, upon mutual agreement of ICE and the LEA, sign an IGSA pursuant to standard IGSA formation procedures.

19

Supervision:

Any reference in the MOA or any appendices thereto, to "task force officers" shall not be interpreted to mean that any LEA officers given task force officer certification/classification by ICE will perform ICE functions in the general community. It is specifically understood that the only ICE functions LEA personnel will perform will be those that pertain solely and exclusively to the LEA detention facilities. No term or condition in the MOA or any appendices thereto shall be interpreted to reduce or limit the detention functions assigned to LEA ICE personnel within the confines of the LEA detention facility, regardless of the ICE certifications/classifications or titles provided to such LEA officers.

The LEA must immediately report all detention facility encounters with LEA ICE personnel of an individual who wrongfully claims U.S. citizenship, to the FOD through their chain of command.

A 287(g) delegation of authority detention model is designed to identify and remove aliens amenable to removal that are incarcerated within the LEA's detention facilities pursuant to the tiered level of priorities set forth in Appendix D's "Prioritization" section. The following identifies each entity's roles and responsibilities. These roles and responsibilities include, but are not limited to:

The LEA shall provide notification to the ICE supervisor of any detainers placed under 287(g) authority within 24 hours.

The LEA shall coordinate transportation of detainees processed under 287(g) authority in a timely manner, in accordance with the MOA and/or IGSA.

The LEA is responsible for ensuring proper record checks have been completed, obtaining the necessary court/conviction documents, and, upon arrest, ensuring that the alien is processed through ENFORCE/IDENT and served with the appropriate charging documents.

The LEA must immediately report all encounters of an individual who claims U.S. citizenship to the FOD through their chain of command. The FOD shall make the appropriate notification to DRO headquarters.

The ICE supervisor is responsible for requesting alien files, reviewing alien files for completeness, approval of all arrests, and TECS checks and input. The FOD office is responsible for providing the LEA with current and updated DHS policies regarding the arrest and processing of illegal aliens.

On a regular basis, the ICE supervisors are responsible for conducting an audit of the IDENT/ENFORCE computer system entries and records made by the LEA's officers. Upon review and auditing of the IDENT/ENFORCE computer system entries and records, if errors are found, the ICE supervisor will communicate those errors in a timely manner to the responsible

Case 1:12-cv-01349-TDS-JLW   Document 89-4   Filed 03/03/14   Page 36 of 37

official for LEA. The ICE supervisor will notify the LEA of any errors in the system and the LEA is responsible for submitting a plan to ensure that steps are taken to correct, modify, or prevent the recurrence of errors that are discovered.

Nominated Personnel:

All LEA jail enforcement officer candidates shall have specific experience that should consist of having supervised inmates. Candidates must show that they have been trained on and concerned with maintaining the security of the facility. Candidates must have enforced rules and regulations governing the facility on inmate accountability and conduct. Candidates must also show an ability to meet and deal with people of differing backgrounds and behavioral patterns.

ICE and the LEA hereby agree that so long as an individual trained for ICE functions is employed by the LEA, the LEA will use reasonable efforts not to reassign such individual for a minimum period of two years.

**Complaint Procedure:**

No term or condition in the MOA or any appendices thereto shall require the LEA to report any information to ICE or any other party in violation of state law.

**Interpretation Services:**

Participating LEA personnel will provide an opportunity for subjects with limited English language proficiency to request an interpreter and will be instructed on the proper administrative procedures to follow to obtain the services of an interpreter when the need arises. In these instances, designated LEA personnel will work closely with the designated ICE Supervisor, Acting Supervisor or Team Leader to utilize existing ICE interpretation services, when appropriate, at no cost to the LEA.

**Release of Information to the Media and Other Third Parties:**

With respect to Section XVIII, above, related to the release of information to the media and other third parties, the LEA will take into reasonable consideration any potential negative impact the release of the particular information may cause to ICE. Further, the LEA will specifically take into reasonable consideration, 8 C.F.R. § 236.6 involving information regarding detainees.

Case 1:12-cv-01349-TDS-JLW   Document 89-4   Filed 03/03/14   Page 37 of 37