IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff;<br><br>    v.<br><br>Terry Johnson, in his official capacity as Alamance County Sheriff,<br><br>                Defendant. | No. 12-cv-1349<br><br>UNITED STATES' MOTION FOR SUMMARY JUDGMENT |

# Exhibit 7

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
                Civil Action No. 1:12-CV-1349
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>TERRY S. JOHNSON, in his official capacity as Alamance County Sheriff,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEPOSITION

OF

DEWEY EUGENE JONES

The deposition of DEWEY EUGENE JONES was taken by the Plaintiff for the purpose of discovery and for use as evidence in the above-entitled cause before PAGE CHAMPION ROBERTS, CVR-CM, Certified Verbatim Reporter and a Notary Public for the county of Guilford and the state of North Carolina at large, in the Office of the United States Attorney, 101 South Edgeworth Street, Fourth Floor, Greensboro, North Carolina, on the 23rd day of January 2014, beginning at 9:27 a.m.

*Graham Erlacher and Associates 336-768-1152*
*3504 Vest Mill Road Suite 22 Winston-Salem, NC 27103*

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 96

1  A. It would rise to the point of probably a written
2  final warning.
3  Q. And what does that mean, "a written final
4  warning"?
5  A. That any other disciplinary action from that point
6  on is - it would be termination.
7  Q. Okay. Would that be - just to be clear, would
8  that be any other violation within the year or ever?
9  A. A written final warning stays in our files.
10 Verbal warnings after a year are taken out.
11 Q. Okay. So within that year if something else
12 occurred---?
13 A. But this one being a written, it would stay in the
14 file.
15 Q. Oh, so this one would be treated differently?
16 A. Yes.
17 Q. Okay. So - I'm sorry - can you explain a little
18 bit more about that?
19 A. Like I said, deeming on the incident of what has
20 occurred and the actions of how it's actually measured, I
21 think this steps beyond a verbal warning, is my basis for
22 saying a written---
23 Q. Okay.
24 A. ---warning.
25 Q. I'm sorry. Were you done?

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 97

1  A. Uh-huh.

2  Q. Okay. If a sheriff wanted his officers to target
3  a predominantly Mexican drug cartel, would it be appropriate
4  for that sheriff to say to his officers, quote, "Go get them
5  Mexicans," quote?

6  A. I don't think it would need to quote it as "Go get
7  the Mexicans." You know, I - I personally - you know, it
8  doesn't matter what race, or whatever. If we're going to
9  target somebody, go get the people who are violating the
10 crimes, whether it's drug dealers or whether it's criminal -
11 you know, criminal activity.

12 Q. So "Go get the criminals"---

13 A. Yes.

14 Q. ---might be more appropriate?

15 A. Yes.

16 Q. Okay. So you mentioned your - your declaration.
17 So let me just - I know you have a copy but I'm going to
18 just give you a copy for the record.

19         (Thereupon, Deposition Exhibit Number 2 is marked
20     for identification.)

21 Q. So, Sheriff, I'm showing you what's been marked as
22 Exhibit 2. Do you recognize this?

23 A. Yes, I do.

24 Q. Okay. And what is it?

25 A. It is the declaration that - that actually was

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 89

1  Q. ---the end of the year?

2  A. No.

3  Q. Okay. And - and I'm not asking about any specific
4  officers. I'm not asking if this has occurred. I'm just
5  asking more in the theoretical. What are the types of
6  citizen complaints that would be the kind that would make
7  the Chief - if validated, the Chief Deputy think, "This is a
8  serious situation"?

9  A. If - if somebody is involved in criminal activity.

10 Q. For example?

11 A. Drinking and driving, use of illegal drugs, or
12 involved in any type of criminal activity.

13 Q. What type of citizen complaints would trigger the
14 deputy - the Chief Deputy saying, "This is a serious citizen
15 complaint"?

16 A. I would say a male officer inappropriate on a
17 female officer type of complaint.

18 Q. Would - would an allegation of discriminatory
19 policing be considered serious?

20 A. Yes.

21 Q. Okay. So we talked about leadership before, and
22 you said that you had taken the course, the Sheriff's
23 Institute, and the importance of leadership, the importance
24 of sort of setting the right tone. Do you think that it's
25 important for leadership in a sheriff's office to send a

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 90

1  clear message that biased policing is not to be tolerated?
2      A.  Yes.
3      Q.  Okay.  And why is that?
4      A.  Like I say, morals and believing in fair to
5  everyone.
6      Q.  Do you think it's appropriate for supervisors to
7  send emails making fun of Latinos to officers under their
8  command?
9      A.  No.
10     Q.  Why not?
11     A.  It's inappropriate.  It's - there's no - no room
12 for it.
13     Q.  If that were to happen in your sheriff's office,
14 would there be disciplinary action?
15     A.  There would be.  Like I said, we do basically
16 steps if it - depending on what it is.  It may be a verbal
17 warning or it could be a written final warning or
18 termination.
19     Q.  Right.  Depending on whether this person had done
20 it before, right?
21     A.  Uh-huh.
22     Q.  Is it appropriate for any law enforcement officer
23 to use terms like "wetback" or "spic" to refer to Latinos?
24     A.  No.
25     Q.  What would you do if you were to hear one of your

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 91

1  deputies use the word "wetback" or "spic"?
2      A.  I would let them know that that's inappropriate
3  and they didn't need to speak at that - in that language.
4      Q.  What would you think if you heard a deputy officer
5  of another law enforcement agency, not your own, use the
6  word "wetback" or "spic" to refer to a Latino person?
7      A.  It wouldn't - I don't know if I would approach
8  them, but it would not be professional.
9      Q.  So you would think it wasn't professional?
10     A.  Yes.
11         MR. KITCHEN:  Objection.  If you could - you just
12     cut him off, I think.
13     Q.  I'm sorry.  If I cut you off, please continue.
14     A.  I don't really have anything further.
15     Q.  So let's go back to that hypothetical.  If you
16 overheard a deputy from another law enforcement agency use
17 the word "wetback" or "spic," what would you think about the
18 leadership of that - of that office?
19     A.  My first thought would be that the leadership
20 would need to know about it.  I don't know if they would -
21 if they did know about it, but I would think the leadership
22 would need to know about it.  I would want to know about it.
23     Q.  Okay.  In well-run sheriff's office, what would
24 the punishment be for an officer who used a term like
25 "wetback" or "spic"?

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 92

1    A.    Probably a verbal warning.

2    Q.    And do you think that not punishing, not giving a
3  verbal warning or not giving any type of discipline to an
4  officer who used such a term would give the wrong message to
5  that deputy?

6         MR. KITCHEN:    Objection.

7    Q.    You can answer.

8    A.    I do.

9    Q.    Okay.  So this is Exhibit 1.

10        MS. DOMINGUEZ-REESE:    There you go.  Thank you.

11        (Thereupon, Deposition Exhibit Number 1 is marked
12    for identification.)

13   Q.    So I'm going to show you what's been marked as
14 Exhibit 1.  I want to give you a minute or two to flip
15 through it.  It's about four pages.  Let me know when you're
16 done.

17        (Thereupon, the witness reviews the aforementioned
18    document.)

19   A.    I'm done.

20   Q.    Okay.  So as you see Exhibit 1 - I'm going to
21 represent to you this is a video game or this is the screen
22 shots from a video game, and I'm also going to represent to
23 you that the goal of this game is what is says right here:
24 "There is one simple objective to this game, keep them out
25 at any cost."  Do you see on the right-hand side there are

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 93

```
 1  three images, three faces, and it says "Mexican
 2  Nationalist," "Drug Smuggler," "Breeder"?  Do you see that?
 3       A.   Uh-huh, I do.
 4       Q.   Okay.  And you see that the name of the game is -
 5  or the name of this is "Border Patrol"?
 6       A.   Yes.
 7       Q.   Okay.  So let's go to the next page.  You see on
 8  this page we see the individual that was on the first page,
 9  the Mexican nationalist, and you see an individual carrying
10  a gun and what looks like running or walking in the middle
11  of the screen, correct?
12       A.   Yes.
13       Q.   And you see that in front of him - or to the side,
14  rather, there's a sign that says "Welcome to the United
15  States"?
16       A.   Yes.
17       Q.   And you see that there's what appears to be an
18  American flag with gun shots---
19       A.   Yes.
20       Q.   ---like, holes?
21       A.   Yes.
22       Q.   Okay.  You also see that to the right of the
23  individual is a gun sight?
24       A.   Yes.
25       Q.   Turning to the next page, you see the same
```

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 94

1  scenario, the desert scene, the sign that says "Welcome to
2  the United States," but this time the individual is - from
3  the first page, the one termed "Breeder," and you see that
4  it is what appears to be a pregnant female?
5     A.  Uh-huh, yes.
6     Q.  And pulling one, at least, perhaps two. The
7  second person is somewhat covered by the sign. You see
8  that, correct?
9     A.  Yes.
10    Q.  Okay. So turning to the very last page, you see
11 that the screen says, "You hit 15 of 88 wetbacks. Alright
12 Paco, got a greencard," and then it asks "Play Again?" You
13 see this, correct?
14    A.  Yes.
15    Q.  Okay. What is your opinion of such a game being
16 distributed amongst law enforcement individuals?
17    A.  I think it would be an inappropriate game.
18    Q.  Okay. And why do you say that?
19    A.  There's a lot of games these days that's - in my
20 opinion, it creates hatred and, basically, discrimination.
21    Q.  And how does it - how would it do that?
22    A.  I mean, on this particular game here, it's very
23 obvious that - of what the game is intended.
24    Q.  And what do you believe that is?
25    A.  It's to kill the Mexican or to keep him out of the

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 95

1 United States.

2 Q. Would it ever be appropriate for an individual in
3 a law enforcement agency to circulate this to other
4 individuals in that same law enforcement agency?

5 A. I would certainly hope not.

6 Q. And what's your basis for that?

7 A. Like I said, that's inappropriate for any type of
8 work environment, especially in law enforcement.

9 Q. Okay. A hypothetical: If a captain in your
10 office was to send this video to his or her subordinates,
11 what type of message would that send to - to the other - to
12 the subordinates?

13 MR. KITCHEN: Objection.

14 Q. You can answer.

15 A. They would feel if the captain sent it, then it
16 was okay for them to send it.

17 Q. If the captain sent it to his subordinates, would
18 that send a message that discriminatory policing is
19 acceptable?

20 MR. KITCHEN: Objection.

21 Q. You can answer.

22 A. I think it's very inappropriate.

23 Q. What type of discipline would you impose on a
24 member of your command staff who sent a game like this to
25 his subordinates?

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 64

```
 1  pick up her children from school, or whatever, and cannot
 2  stay and wait to speak to the captain. What happens in that
 3  instance?
 4      A.  They are - they can be given a complaint form, and
 5  then they can get it back to us, and then we will follow up
 6  on it.
 7      Q.  So there are instances where a complaint form can
 8  be given---
 9      A.  Yes.
10      Q.  ---even before the captain has had the opportunity
11  to settle it?
12      A.  Yes.
13      Q.  Okay. When you evaluate the performance of
14  deputies, how often do you do that?
15      A.  Annually.
16      Q.  For everyone?
17      A.  Yes.
18      Q.  And is it ever factored into the evaluation of a
19  deputy, a captain, a sergeant, whoever the individual may
20  be, if there are citizen complaints that have been lodged
21  against that person?
22      A.  Your question is---
23      Q.  I can - I can---
24      A.  ---does an officer know---?
25      Q.  No. I'm sorry. I'll - I'll - I'll restate it.
```

UNITED STATES vs. TERRY S. JOHNSON
Jones, Dewey on 01/23/2014

Page 65

1  Let's - let's say you are going to evaluate Deputy Smith.
2    A.   Uh-huh.
3    Q.   This person has been working for you for a couple
4  years. This is the person's third evaluation. Is it ever
5  considered or factored into Officer Smith's evaluation
6  whether or not he has any citizen complaints that were
7  lodged to get him - against him? Excuse me.
8    A.   Yes, it is.
9    Q.   Okay. And how does that work?
10   A.   Our evaluation - part of his evaluation forms is,
11  first, a deputy is evaluated by the sergeant. Then the
12  sergeant turns it over to the captain, and then when it's
13  that point he would actually just note it in - in the
14  performance evaluation.
15   Q.   Okay. And does Person County Sheriff's Office
16  look at the way that deputies conduct searches - vehicle
17  searches, to be specific?
18   A.   Say that again.
19   Q.   Does Person County Sheriff's Office, anybody above
20  a deputy, look at the way deputies conduct vehicle searches?
21   A.   No.
22   Q.   When a search is conducted, is a form filled out?
23   A.   No, not on every search. If there's going to be a
24  seizure, then a form is filled out.
25   Q.   Okay. So if something is found, if contraband is